**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Damon L. BENSON, Appellant.**

Superior Court of Pennsylvania.

Submitted July 12, 2010.
Filed Dec. 16, 2010.

Timothy P. Wile, Norristown, for appellant.

John E.D. Larkin, Assistant District Attorney, Norristown, for Commonwealth, appellee.

BEFORE: LAZARUS, OLSON, and FREEDBERG, JJ.

OPINION BY FREEDBERG, J.:

Damon Benson appeals from the judgment of sentence entered on July 6, 2009, by the Court of Common Pleas of Montgomery County. We affirm the judgment of sentence.

The relevant facts underlying this case are taken from the trial court's opinion dated February 24, 2009.

... The victim in this case, Theresa Wisniewski, was a seventy-seven (77) year old woman who lived alone in Montgomeryville, Montgomery County, Pennsylvania. At trial, Ms. Wisniewski testified that, at approximately noon on January 15, 2008, she left her residence to run a series of errands. When Ms. Wisniewski returned home, she noticed an unfamiliar blue sedan parked in her driveway. Wondering if someone had come to visit her, she opened the screen door to the house, at which point she was grabbed by the defendant, who pulled her inside and threw her across the sofa, demanding money.

Ms. Wisniewski told defendant that her money was in her purse, which had fallen to the floor when she was tossed across the sofa. Defendant then took hold of Ms. Wisniewski by the shoulders and forced her into the kitchen and then

through a door, which he mistook for a closet. Defendant then bolted the door behind her.

The door, in fact, led to the home's basement, where there existed another door leading to the outside. Ms. Wisniewski waited for some time in the basement, and then opened this door and peeked outside. When she realized that the blue sedan that had been parked in her driveway was gone, Ms. Wisniewski left the basement and the police were summoned.

During the course of the resulting police investigation, it was discovered that a number of items had been stolen from Ms. Wisniewski's home, including jewelry and an antique pistol, taken from Ms. Wisniewski's bedroom. Ms. Wisniewski's purse and its contents were also gone, including a $100 gift card, $90 in cash, and Ms. Wisniewski's credit cards. Defendant had even stolen a sandwich that Ms. Wisniewski had purchased while running her errands. Ms. Wisniewski reported that the total value of the property stolen as approximately $2,400. The jewelry and cash were never recovered. The stolen pistol was ultimately discovered during a search of a bedroom closet used by defendant in a Philadelphia residence where defendant lived with his then-girlfriend Tawanda Armour.

The police later discovered that, after the burglary and robbery at the Wisniewski residence, defendant used a J.C. Penny card which had been inside Ms. Wisniewski's stolen purse to purchase an Axion DVD Theater System, valued at approximately $300. The box for this theater system was discovered during the search of defendant's closet, and the theater system itself was discovered during a search of defendant's automobile.

Trial Court Opinion 2/24/09 at 1–3.

Following a jury trial, Appellant was convicted of burglary,[1] robbery,[2] simple assault,[3] reckless endangerment,[4] unlawful restraint,[5] theft by unlawful taking or disposition,[6] and receiving stolen property.[7] At sentencing, on July 6, 2009, the parties agreed that Appellant's convictions for simple assault, reckless endangerment, unlawful restraint, and receiving stolen property merged for purposes of sentencing. All agreed that the trial court would impose sentence on the burglary, robbery, and theft by unlawful taking convictions. On the burglary conviction, Appellant was sentenced to the mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9714(a)(1) (conviction of a prior crime of violence) of ten (10) to twenty (20) years of incarceration. Appellant was sentenced to a consecutive sentence of three (3) to ten (10) years on the robbery conviction. Finally, Appellant was sentenced to a consecutive sentence of one and one-half (1½) to three (3) years of incarceration on the theft conviction.

On July 16, 2009, Appellant filed post-sentence motions asserting that the trial court had abused its discretion by imposing consecutive sentences and that the trial court erred in refusing to allow admission of a statement made by Appellant to the police following his arrest. Following the filing of the post-sentence motions, the trial court amended the sentence for rob-

---

1. 18 Pa.C.S.A. § 3502(a).

2. 18 Pa.C.S.A. § 3701(a)(1)(v).

3. 18 Pa.C.S.A. § 2701(a)(3).

4. 18 Pa.C.S.A. § 2705.

5. 18 Pa.C.S.A. § 2902(a)(1).

6. 18 Pa.C.S.A. § 3921(a).

7. 18 Pa.C.S.A. § 3925(a).

bery to three (3) to seven (7) years of imprisonment. Appellant's remaining post-sentence motions were denied on November 17, 2009.

The instant timely appeal followed. Appellant was ordered to file a concise statement of errors raised on appeal pursuant to Pa.R.A.P.1925(b). Appellant filed a timely statement, and the trial court issued an opinion.

On appeal, Appellant raises the following contentions for our review:

1. Did the suppression court commit reversible error when it denied Appellant's motion to suppress the fruits of a 28 April 2008 search based upon a search warrant that on its face was approved by the magistrate on 29 April 2008?

2. Did the trial court manifestly abuse its discretion and commit reversible error when it refused to allow the Appellant to refer to a statement that he gave to the police at the time of his arrest during cross-examination of the interviewing police officer?

3. Does the plain language of Section 3502(D) of the Crimes Code render Appellant's sentence for robbery and theft illegal in view of his conviction and sentencing for the related offence of burglary?

Appellant's Brief at 4.

 Appellant first contends that the trial court erred in denying his request to suppress certain telephone bills containing detailed call records obtained pursuant to a warrant issued upon T–Mobile telephone company in April 2008. When we review a ruling on a motion to suppress, we must determine whether the record supports the

trial court's factual findings and the "legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Holton,* 906 A.2d 1246, 1249 (Pa.Super.2006) (citation omitted), *appeal denied* 591 Pa. 697, 918 A.2d 743 (2007). As the trial court in the instant matter found for the prosecution, we consider only the testimony of the prosecution's witnesses and any uncontradicted evidence supplied by the defense. *Id.* If the evidence supports the trial court's factual findings, we may reverse only if there is a mistake in the legal conclusions drawn by the trial court. *Id.*

In the instant matter, a cellular telephone owned by Appellant's then-girlfriend, Tawanda Armour, was used primarily by Appellant. N.T. 1/26/09 at 10–12. Prior to the issuance of the search warrant, Ms. Armour voluntarily supplied Detective Edward Davies of the Montgomery Township Police Department with copies of the cellular telephone bills for January and February, 2008.[8] *Id.* Detective Davies then determined that he should obtain copies of the January and February 2008 bills from the telephone company.[9] On April 28, 2008, he presented a search warrant application to District Justice David Keightly, requesting that he issue a warrant which authorized search and seizure of the cellular telephone records from T–Mobile. *Id.* at 15, 17–19. Detective Davies dated the search warrant application, April 28, 2008, and District Justice Keightly signed, completed, and returned it to Detective Davies that day. *Id.* at 18–20. District Justice Keightly signed and dated the warrant documents in two places. In the section of the document which states on what date the warrant

8. A portion of the bills consisted of detailed call records with a listing of the telephone numbers and call lengths of all local, long distance, and international telephone calls.

9. It is not apparent from the record why Detective Davies believed he needed the records from T–Mobile.

application is sworn to and subscribed, District Justice Keightly dated it April 28, 2008. Application for Search Warrant Number 2008–01471 at p. 1. In the issuing section of the warrant application District Justice Keightly dated it April 29, 2008. *Id.* Detective Davies served it on the cellular telephone provider on April 28, 2008. N.T. 1/26/09 at 20.

■ To prevail on a motion to suppress, the defendant must show that he has a privacy interest which has been infringed upon. *Commonwealth v. Burton,* 973 A.2d 428, 434 (Pa.Super.2009). *Burton* provides that:

> [t]he law relating to a defendant's standing and expectation of privacy in connection with a motion to suppress has been explained by our courts. A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy.... A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. Whether defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion. The determination whether defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant.

*Id.* at 435. The Commonwealth avers that Appellant did not demonstrate that he had a privacy interest in records for a cellular telephone owned by his girlfriend but generally used by Appellant.

In *Smith v. Maryland,* 442 U.S. 735, 737–38, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), police did not obtain a search warrant prior to requesting that the telephone company install on Smith's telephone a pen register device, which records the telephone numbers (although not the contents of a conversation) dialed from a particular telephone. In *Smith,* the United States Supreme Court held that pursuant to the Fourth Amendment of the United States Constitution, an individual does not have a legitimate expectation of privacy regarding numbers dialed on his telephone. *Id.* at 742, 99 S.Ct. 2577.

However, in *Commonwealth v. Beauford,* 327 Pa.Super. 253, 475 A.2d 783, 791 (1984), *appeal dismissed,* 508 Pa. 319, 496 A.2d 1143 (1985), this Court considering a suppression motion brought pursuant to Article 1, § 8 of the Pennsylvania Constitution, recognized a legitimate expectation of privacy regarding numbers dialed on an individual's telephone. This Court found the reasoning in *Smith* to be "manifestly unpersuasive" and concluded that pursuant to the Constitution of the Commonwealth, individuals have a legitimate expectation of privacy in their telephone records. *Id.* at 789. In so holding, the Court in *Beauford* referred to *Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979), in which the Pennsylvania Supreme Court afforded greater privacy protections under the Pennsylvania Constitution and thus a greater right to be free from unreasonable search and seizure than does the Federal Constitution.

Appellant argues that he has a legitimate expectation of privacy under both the Fourth Amendment and Article 1, § 8 of the Pennsylvania Constitution in the telephone records for a cellular telephone mainly used by him but owned by a third party. *Smith* makes clear that he has no legitimate expectation of privacy under the Fourth Amendment. *See United States v. Solomon,* 2007 WL 927960 at *3 (W.D.Pa. March 26, 2007) (which held that the defendant had no legitimate expectation of privacy in cellular telephone records for a cellular telephone in a third party's name).

It is clear after *Beauford,* that, under the Pennsylvania Constitution, an individual has a reasonable expectation of privacy

in his own cellular telephone records. However, there is no support in *Beauford* for the proposition that an individual has a reasonable expectation of privacy in the cellular telephone records of a third party. In *Beauford,* this Court stated that the fact that the telephone company has access to numbers dialed from a particular telephone was irrelevant to the existence of a legitimate expectation of privacy regarding such information because an individual has no choice in the matter. By accepting the fact that the telephone company collected the information for billing purposes the caller was not acquiescing to the turning over of this information to a third party. *Beauford,* 475 A.2d at 789–90.

While the Pennsylvania courts have not previously addressed the issue of whether a regular user of a phone owned by another has a legitimate expectation of privacy in the numbers called with the telephone, courts in other jurisdictions have. The Court of Appeals of Washington held that a defendant did not have a legitimate expectation of privacy in telephone bills in the name of the defendant's wife, because he did not have a reasonable expectation of privacy in records in another person's name. *State v. Clay,* 145 Wash.App. 1040, 2008 WL 2721282, at *3 (July 14, 2008).[10] The Court stated that Clay failed to produce evidence showing that he had a written agreement with the cellular telephone services provider and "[i]n the absence of that evidence, the trial court properly determined that Clay failed to show that he had a reasonable expectation of privacy in phone records connected to the account which was in the name of [his wife]." In a case decided under the Minnesota Constitution, whose protections against search and seizure are "coextensive" with those under the Fourth Amendment, the Minnesota Supreme Court held that an individual does not have a legitimate expectation of privacy in cellular telephone records for a telephone "sub-sub-leased"[11] by him but owned by a third party. *State v. Gail,* 713 N.W.2d 851, 860–61 (Mn.2006). The Minnesota Supreme Court stated that the most important factor in this decision is the fact that the individual was a "stranger ... to the holder of the records at issue here," did not receive the bills for the usage of the telephone, and did not pay the bills directly to the company. *Id.* The Minnesota Supreme Court concluded:

> [i]n this case, Gail was three steps removed from Verizon and the records it produced via the company's "lease" to Larkins, Larkin's "sub-lease" to Davis, and Davis's "sub-sub-lease" to Gail.... Because two other people stood between Gail and Verizon ... we cannot conclude on this record that Gail subjectively expected Verizon to keep records of his cell phone usage private.

*Id.* at 860.

■ While the Pennsylvania Constitution affords greater protection against unreasonable search and seizure than the Federal Constitution and the Minnesota Constitution, it does not afford an individual a legitimate expectation of privacy in the telephone bills of a third party, particularly where, as here, the third party agreed to turn over duplicates of the bills to the police. We find the reasoning in *Gail* and *Clay* persuasive. Thus, while Appellant had use of the telephone, the bills in question were not *his* telephone bills. The telephone in question was Tawanda Arm-

10. It is not apparent whether this issue was decided under both the Fourth Amendment and the Washington State Constitution.

11. In a complicated factual scenario, an individual named Byron Davis paid a second individual named Erick Larkins to lease cellular telephones. Davis then "sub-sub-leased" the telephones to other individuals, including the defendant. The bills were in Larkins' name but went to Davis's address.

our's and she is the one who received and had the obligation to pay the telephone bills containing the records of telephone numbers dialed. Appellant had no legal right to request or control access to the information from the telephone company because he was not the owner of the telephone. He had no legitimate expectation of privacy in them.

Based upon the above, we hold that Appellant has no legitimate expectation of privacy under either the United States Constitution or the Pennsylvania Constitution in the cellular telephone records for a telephone used by him but owned by a third party. Thus, there is no merit to Appellant's claim that the trial court erred in failing to suppress the telephone records.

■ Even if Appellant had demonstrated a legitimate expectation of privacy in the telephone records at issue, his claim would fail. Pennsylvania Courts have long held that a technical defect in a warrant, such as the mis-dating at issue here, does not render a warrant invalid in the absence of a showing of prejudice. *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137, 140 (1983) (upholding the validity of a warrant issued on September 5, where the magistrate inadvertently recorded the date of issuance as September 6); *See also Commonwealth v. Begley*, 566 Pa. 239, 780 A.2d 605, 641 (2001) ("An error in a warrant is fatal only if it deprives a reviewing court of the ability to review the propriety of the issuance and execution of the warrant."). Appellant did not present any evidence at the suppression hearing and has not demonstrated any prejudice from the clerical error at issue.

■■ Appellant next contends that the trial court erred in sustaining the Commonwealth's objections to questions asked about a statement given by Appellant to the police following his arrest. Our standard of review is well settled; we may

reverse a trial court's evidentiary rulings only if the trial court abused its discretion. *Commonwealth v. O'Brien*, 836 A.2d 966, 968 (Pa.Super.2003) (internal citation omitted), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004). We cannot overturn a trial court's discretionary ruling merely because we might have reached a different conclusion. *Id.* In defining the term "abuse of discretion," the Supreme Court of Pennsylvania has stated that an abuse of discretion is not simply an error of judgment but an overriding or misapplication of the law. *Commonwealth v. Kocher*, 529 Pa. 303, 602 A.2d 1308, 1310 (1992). Further, an abuse of discretion will be found if the trial court's judgment was "manifestly unreasonable or the result of partiality, prejudice, bias, or ill will as shown by the evidence of record." *Id.*

■ Following his arrest in Philadelphia, Appellant gave a statement to Philadelphia Police Detective Davies. At trial, argument was held outside the presence of the jury about whether Appellant could cross-examine Davies about the contents of the statement, given that Appellant had already indicated he would not be testifying on his own behalf. N.T. 1/27/09 at 89–112. Specifically, Appellant wanted to elicit testimony that he told the Detective: (1) he received the antique gun from a friend named Kevin Johnson in payment of a debt; (2) he purchased the portable video player found in his car from "somebody"; (3) he was not in Montgomeryville Township at the time of the crime; and (4) he had no knowledge of the victim. *Id.* at 90–93. The trial court ruled that the statement was inadmissible hearsay in reliance on the Pennsylvania Supreme Court's decision in *Commonwealth v. Murphy*, 493 Pa. 35, 425 A.2d 352 (1981).

In *Murphy*, our Supreme Court held that, "[w]here a defendant seeks at trial to introduce his own statements made at the

time of arrest to support his version of the facts, such testimony is clearly offensive to the hearsay rule." *Id.* at 356. At trial, defense counsel acknowledged that she wanted to question Detective Davies about the contents of the statement and that she was offering the statements to prove the truth asserted. N.T. 1/27/09 at 97–112. Counsel acknowledged that *Murphy* was good law, but argued that the statements were admissible as a statement against penal interests pursuant to Pa.R.E. 804(b)(3) which states:

**Rule 804. Hearsay exceptions; declarant unavailable**

\*　　\*　　\*

**(b) Hearsay Exceptions.** The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant is unavailable as a witness: (3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. In a criminal case, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Appellant now contends that he did not want to cross-examine Detective Davies about the content of the statement itself, but merely wanted to elicit the fact that he made a statement to the police. Appellant argues that this question was proper under Pa.R.E. 804(b)(3). This argument is belied by the record. At trial, defense counsel specifically stated that she wanted to "question Detective Davies regarding some of the information that's in the statement." N.T. 4/27/08 at 97; *see also* N.T. 4/27/08 at 105–06. Further, Appellant does not point to any case law in support of a claim that this question was admissible.[12] Lastly, Appellant does not point to any specific portion of the statement that was against penal interest. Rather, Appellant speculates that unspecified "facts" contained in the statement might have subjected him to charges in Philadelphia for receiving stolen property. Appellant's Brief at 34. We have reviewed the record and do not see how any portion of Appellant's self-serving exculpatory statement can be regarded as against his penal interests. The line of questioning was foreclosed by *Murphy*. Thus, the trial court did not abuse its discretion in sustaining the Commonwealth's objection.

Appellant argues that his sentence is illegal pursuant to 18 Pa.C.S.A. § 3502(d),[13] because he was sentenced for both burglary and robbery. Prior to sentencing, a conference took place in this matter in which merger was discussed, and the parties agreed that the robbery and burglary sentences did not merge. At sentencing, Appellant's counsel referenced the conference and agreed on the record that these charges did not merge.[14] N.T. 7/06/09 at 20–23. However, because a claim that a trial court erroneously did not

---

**12.** Thus, Appellant does not explain how the fact that he spoke to the police is relevant or how it was proper cross-examination of the witness.

**13.** A person may not be convicted both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree.

**14.** Counsel did not state the basis for this agreement. Thus, it is unclear if 18 Pa.C.S.A. § 3502(d) was discussed.

merge charges for purposes of sentencing is a non-waivable challenge to the legality of sentence, *Commonwealth v. Williams,* 920 A.2d 887, 888 (Pa.Super.2007), we will discuss the merits of Appellant's claim.

In discussing 18 Pa.C.S.A. § 3502(d), this Court has stated that:

> [i]n applying the doctrine of merger, we are obliged to interpret the verdict not in the light of theoretical possibilities, but rather in the light of common sense. The inquiry depends to some extent on the "unique facts" of each case.

*Commonwealth v. Couch,* 731 A.2d 136, 144 (Pa.Super.1999) (internal citation omitted). A person commits burglary if "he enters a building or occupied structure, or separately secured or occupied portion thereof, with the intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa. C.S.A. § 3502(a). Appellant was found guilty of robbery as a felony of the third degree pursuant to 18 Pa.C.S.A. § 3701(a)(1)(v). A person commits robbery pursuant to that statute "if in the course of committing a theft he physically takes or removes property from the person of another by force however slight." 18 Pa.C.S.A. § 3701(a)(v).

We agree with the trial court that the relevant question is whether Appellant intended to commit theft or robbery when he entered the victim's dwelling. Here, the evidence showed that Appellant was unarmed and entered the residence at a time when the victim was away from home. Appellant ransacked her bedroom and stole an antique gun. When the victim returned, Appellant seized her from behind and forced her into what he mistakenly believed was a closet. In the days following the robbery, Appellant repeatedly attempted to contact the victim and even contacted her daughter to find out if the victim was alright. We further agree with the trial court that when looking at the unique facts of this case, this evidence demonstrates that Appellant intended to commit theft and the robbery was an additional, unanticipated crime. Thus, the robbery was a distinct offense and Appellant was properly sentenced on both charges.

Judgment of Sentence **AFFIRMED.** Jurisdiction **RELINQUISHED.**