**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Clyde J. HOPPERT, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 26, 2011.

Filed Feb. 6, 2012.

---

MaryJean Glick, Public Defender, Lancaster, for appellant.

Craig W. Stedman, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

BEFORE: DONOHUE, OLSON and STRASSBURGER *, JJ.

* Retired Senior Judge assigned to the Superior Court

**360**

OPINION BY OLSON, J.:

Appellant, Clyde J. Hoppert, appeals from the judgment of sentence entered on February 1, 2011 following his bench trial convictions on 19 counts of sexual abuse of children (dissemination of child pornography) and two counts of sexual abuse of children (possession of child pornography).[1] After careful consideration, we affirm.

The facts and procedural history of this case are as follows. While investigating a child pornography case involving an America Online (AOL) user with a screen name "wersupr," a detective from California obtained a search warrant and received information that "wersupr" had received and opened three e-mails sent by an AOL user "CJHOPPERT." These e-mails were sent on November 23, 2007 and each contained attachments of photos depicting girls under the age of ten displaying their genitals. By federal subpoena, the detective discovered that "CJHOPPERT" was a computer user on an AOL account registered to Sallie Hoppert who resided on Countryside Drive, Lancaster, Pennsylvania. On May 8, 2008, the California detective relayed this information to Detective Peter J. Savage of the Lancaster County District Attorney's Office and Appellant became the subject of investigation in Pennsylvania.

Subsequently, Detective Savage checked the Pennsylvania Department of Transportation ("PennDOT") records and determined that Appellant previously lived on Countryside Drive, but learned that he was currently residing on Haskell Drive in Manheim Township, Lancaster County, Pennsylvania. Detective Savage also personally viewed the images contained in the e-mails and opined that the photos contained images of girls, under the age of eighteen, exposing their genitalia, and

were therefore in violation of 18 Pa.C.S.A. § 6312. Accordingly, Detective Savage submitted an affidavit of probable cause and application for a search warrant seeking the AOL records pertaining to the account registered to Sallie Hoppert. A search warrant was issued on May 16, 2008 (hereinafter "first warrant"). Upon receiving the documents from AOL, Detective Savage ascertained that "CJHOPPERT" was logged on to AOL for five hours on November 23, 2007, that the three e-mails at issue had been sent during that time period, and that "wersupr" was on the contact list established by "CJHOPPERT." Moreover, the AOL account was closed on February 1, 2008. Detective Savage relayed this information to Detective Allen Leed of the Manheim Township Police Department.

Detective Leed submitted an affidavit of probable cause for a search warrant at Appellant's Haskell Drive address that was granted on July 16, 2008 (hereinafter "second warrant"). On July 17, 2008, police executed the second warrant and recovered three computers and AOL documentation from the subject residence. An ensuing search of the computers revealed 183 images of child pornography, 60 images of child erotica, and 40 e-mails, either sent or received, containing child pornography.

The Commonwealth charged Appellant with the aforementioned crimes. Prior to trial, Appellant filed a motion to suppress the evidence obtained from both search warrants at issue. He also sought to suppress subsequent statements he made to police, arguing that the statements were the fruit of the unlawful searches. Following a hearing, the trial court denied relief on August 18, 2010. The case proceeded to a stipulated bench trial. On October 15,

1. 18 Pa.C.S.A. § 6312(c) and (d), respectively.

2010, the trial court found Appellant guilty of the above-mentioned crimes. On February 1, 2011, the trial court sentenced Appellant to an aggregate term of imprisonment of three to 23 months, with an additional five years of probation. This timely appeal followed.[2]

On appeal, Appellant presents a single issue for our review:

Did the trial court err in denying the Motion to Suppress, where the information contained in the search warrant issued on May 15, 2008 was stale, where there was no probable cause to conclude that AOL had retained copies of any of [Appellant's] e-mails subsequent to the termination of his account and there was no probable cause to conclude that child pornography was ever stored or viewed on a computer owned by [Appellant] and located at [his] Haskell Drive [residence]?

Appellant's Brief at 4.

Appellant contends that the trial court erred in denying suppression of the evidence obtained on the seized computers, as well as his later statements to police. Appellant argues that the information contained in the affidavit of probable cause supporting the first warrant was stale because there was no probable cause "to believe that AOL had retained copies of e-mails sent by its user 'CJHOPPERT' on one of its servers over three months after the account was closed." *Id.* at 8 and 12. With regard to the second warrant, Appellant asserts "the affidavit of probable cause failed to establish any nexus between the three e-mail attachments forwarded in November 2007 and any computer at [Appellant's] Haskell Drive [address]." *Id.* at 13. Appellant contends

that there was no evidence that the AOL users from Countryside Drive were linked to his residence on Haskell Drive. *Id.* Moreover, Appellant claims that there was no indication that the three e-mail attachments were ever downloaded, saved, deleted or viewed by "CJHOPPERT" at the Haskell Drive address. *Id.* at 14. Accordingly, Appellant argues that the search warrants were issued without probable cause and required suppression. *Id.* at 16. Finally, Appellant maintains that his statements made to police mandated suppression because the searches were tainted. *Id.* at 16.

The Pennsylvania Supreme Court has set forth our standard of review as follows:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclu-

2. Appellant filed a timely notice of appeal on March 2, 2011. On March 7, 2011, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied on March 28, 2011. On April 20, 2011, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

sions of law of the courts below are subject to our plenary review.

Before the suppression court, [Appellant] challenged the legality of the search warrant under the Pennsylvania and United States Constitutions, arguing only that the warrant was not supported by probable cause. Thus, [Appellant's] challenge has root in Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution.

Article I, Section 8 and the Fourth Amendment each require that search warrants be supported by probable cause. The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause. Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted.

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court established the totality of the circumstances test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. In *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1986), [the Pennsylvania Supreme] Court adopted the totality of the circumstances test for purposes of making and reviewing probable cause determinations under Article I, Section 8. In describing this test, [our Supreme Court] stated:

> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in *Gates,* the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

* * *

Further, a reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

As our United States Supreme Court stated: "A grudging or negative attitude by reviewing courts towards warrants ... is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a common-sense, manner." *Gates, supra* at 236, 103 S.Ct. 2317 (citation and quotation marks omitted); *see also United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ("Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectu-

ated by according 'great deference' to a magistrate's determination.").

*Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 654–656 (2010) (brackets and some quotations and internal citations omitted).

 We begin our analysis by considering Appellant's claim that the information set forth in the first warrant was stale since there was no probable cause to believe that AOL retained copies of e-mails sent by user "CJHOPPERT" after the AOL account had been closed. "Settled Pennsylvania law establishes that stale information cannot provide probable cause in support of a warrant." *Commonwealth v. Janda*, 14 A.3d 147, 158 (Pa.Super.2011) (citation omitted). In particular:

> [A]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, **we must also examine the nature of the crime and the type of evidence.**

*Id.* at 158–159 (emphasis added).

Our review of the relevant case law leads us to conclude that Appellant's staleness challenge is without merit. In *Commonwealth v. Novak*, 233 Pa.Super. 236, 335 A.2d 773, 775–776 (1975), we noted that observation of narcotics seven weeks prior to applying for a warrant did not provide probable cause to search the defendant's residence for drugs. We reasoned that a stale observation of items that can be quickly disposed of, such as drugs, does not provide probable cause for a warrant absent evidence of an ongoing course of conduct on the part of the defendant.

*Id.* However, more recently we observed in *Janda*, that "shoes, unlike drugs, are not an item commonly disposed of soon after they come into their owner's possession [and that] the issuing authority needed to find only a 'fair probability' that the shoes Janda wore during the Berks County burglary would be found at his apartment." *Janda*, 14 A.3d at 159.

In *Commonwealth v. Gomolekoff*, 910 A.2d 710 (Pa.Super.2006), this Court was faced with an almost identical challenge as lodged *sub judice*. Therein, the appellant argued that two e-mails allegedly containing images of child pornography were sent to him nine-and-a-half months prior to the issuance of a warrant to search his home, thus rendering the information stale. After examining federal case law, we determined that pedophiles rarely dispose of child pornography because it is illegal and difficult to obtain. *Id.* at 714. Moreover, in *Gomolekoff*, again relying on federal case law, we found that even if the pornographic photographs at issue were deleted, forensic scientists could easily retrieve the images from the computer. *Id.*

 Upon review in this case, we conclude the issuing authority did not err in granting the first search warrant. When seeking that warrant, police had information that an AOL user had sent three e-mails containing pornographic materials. While the e-mails were sent six months prior to the issuance of the warrant, the information sought was not easily disposable and there was a fair probability that AOL had retained it. *Janda, supra.* It matters not that the AOL account was closed three months prior to the issuance of the first warrant. Otherwise, child pornographers could easily and effectively avoid prosecution by constantly changing internet service providers. In today's day and age, we cannot agree that the closure of a computer account negates probable

cause to search the digital files of an internet service provider.[3] Accordingly, we conclude that the first warrant was properly supported and find no merit in Appellant's claim that the information in the first warrant was stale.

■ With regard to the second warrant, police obtained information that the computer user "CJHOPPERT" sent the e-mails at issue and was registered to an AOL account established by Sallie Hoppert. The AOL account was opened in 2000 and the address listed was on Countryside Drive, Lancaster, Pennsylvania. After checking official documentation with PennDOT, police discovered that Appellant, who previously resided at Countryside Drive, the residential address of the AOL account holder, had relocated to Haskell Drive. The nexus between the two addresses was verifiable. In addition, there was a fair probability that police would find the computer, moveable and non-disposable property, at the new location. *Janda, supra*. Moreover, even though the second warrant was issued in July 2009, eight months after the subject e-mails were sent, this Court has previously determined that a period of nine-and-a-half months was not such a long time as to render evidence of this nature stale. *Gomolekoff, supra*.

■ Next, we address Appellant's contention that there was no evidence that he viewed the e-mails at the Haskell Drive address. In applying for the warrant, Officer Leed noted that "CJHOPPERT" was logged onto a computer for five hours during the relevant period that the pornographic e-mails were sent. Based on the totality of the circumstances, it was reasonable for the issuing authority to conclude that probable cause existed to execute the second warrant. Digital possession and transfer of illegal pornographic images formed the basis of the offenses for which Appellant was charged. Thus, there was a fair probability that evidence of such crimes would be stored on Appellant's personal computer. Common sense dictates that someone viewing illegal materials on a computer would do so in the privacy of his own home. Further, we reject Appellant's argument that there was no evidence that

---

**3.** We further note that while neither party nor the trial court raised the issue, we question whether Appellant had an expectation of privacy in the AOL records that were the subject of the first search warrant. "[A]s a preliminary matter, [a defendant] must show that he had a privacy interest in the area searched." *Commonwealth v. Jones*, 874 A.2d 108, 117 (Pa.Super.2005). Here, the AOL account was registered to Sallie Hoppert, not Appellant.

Although it does not appear that Pennsylvania courts have addressed the expectation of privacy in computer user accounts, we note that another panel of this Court recently examined the issue in relation to cellular phone records in *Commonwealth v. Benson*, 10 A.3d 1268 (Pa.Super.2010). In *Benson*, the defendant sought to suppress records related to a cellular phone owned by his then-girlfriend, on a cell phone primarily used by him. We ultimately concluded:

> [W]hile Appellant had use of the telephone, the bills in question were not *his* telephone bills.... Appellant had no legal right to request or control access to the information from the telephone company because he was not the owner of the telephone. He had no legitimate expectation of privacy in them.

*Id.* at 1273–1274 (emphasis in original). Moreover, our decision in *Benson* relied upon a 2008 Washington Court of Appeals case wherein that court held that "a defendant did not have a legitimate expectation of privacy in telephone bills in the name of defendant's **wife**." *Id.* at 1273 (emphasis added).

However, because the precise issue was not squarely before the trial court, we do not reach a decision as to whether Appellant had an expectation of privacy in the AOL records held in his wife's name. We merely note this threshold requirement for future guidance for both bench and bar.

the e-mails had been viewed or opened before forwarding them. The relevant portions of the sexual abuse of children statute refers to the knowing retention and **transfer** of child pornography. *See* 18 Pa.C.S.A. § 6312 (emphasis added). Again, common sense tells us that people generally do not forward e-mails without first ascertaining the contents. As such, the second warrant was issued with probable cause and Appellant's argument to the contrary is meritless.

Finally, having concluded that the searches and seizure were proper, Appellant's contention that his subsequent statement to police "was the fruit of the unlawful search of his residence" must likewise fail. Appellant's Brief at 17.

Judgment of sentence affirmed.

STRASSBURGER, J., files a Concurring Statement.

CONCURRING STATEMENT BY STRASSBURGER, J:

I join in the Majority Opinion and its holding that the trial court properly denied Appellant's motion to suppress evidence.

However, I disagree with the Majority's decision to discuss, however briefly, the issue of whether Appellant enjoys an expectation of privacy in the AOL account registered to his wife. As the majority notes, neither party nor the trial court raised the issue of standing to challenge the search. This complicated issue is not properly before us nor has it been previously addressed by the court below. Thus I do not believe we should attempt to offer guidance on this point *sua sponte*.