J-A30008-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MILIQUE WAGNER | |
| Appellant | No. 1556 EDA 2013 |

Appeal from the Judgment of Sentence February 6, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000127-2011

BEFORE:  LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 29, 2015**

Milique Wagner appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury found him guilty of murder of the first degree,[1] criminal conspiracy,[2] and possessing an instrument of a crime (PIC).[3]  After careful review, we affirm.

On the evening of February 11, 2010, Wagner, Kelvin Bryant, and Amin Payne gathered at the apartment of Bryant's mother, Debra Sumbler. The three men had been friends for a few years.  Sumbler's boyfriend,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502.

[2] 18 Pa.C.S. § 903(a).

[3] 18 Pa.C.S. § 907.

James Herman Adams, was also present. Throughout the evening, Wagner and Bryant openly carried firearms while Payne was "burning bags," or preparing drugs. At some point, Bryant received a phone call and immediately left the apartment with Wagner; shortly thereafter, Payne followed.

Payne testified that he witnessed Bryant and Wagner "talking to that boy Bra [the decedent, Braheem King] down the street, so I started to walk down Cecil B. Moore towards where they were standing. Then I saw Kelvin and Milique just pull out on the boy and shoot him up." N.T. Trial, 2/4/13, at 269-70. The two shooters then ran, turning onto 26th Street and up the block. Payne ran back to Sumbler's apartment to gather his belongings and then ran home. Later that night, Bryant phoned Payne and told him that he "hollered at another one," meaning he killed another boy. *Id.* at 271.

At trial, Adams testified that, a few minutes after Wagner and Bryant left Sumbler's apartment, he heard about a dozen gunshots from his position in his bedroom.

Philadelphia Police Officer Joseph Ewald testified that, at approximately 8:32 p.m., he and his partner received a radio report about a possible shooting in the area of the 2500 block of Cecil B. Moore Avenue. After arriving on the scene, a crowd directed the officers towards 26th Street. There, they discovered King lying face down in the snow with blood coming from his upper torso area. Medics transported King to Hahnemann Hospital, where he was pronounced dead at 9:09 p.m.

- 2 -

Philadelphia Crime Scene Unit Officer Robert Flade testified, as an expert witness, that at least two semi-automatic handguns were used in the fatal shooting. Police recovered 29 pieces of ballistic evidence from the scene, including two fired projectiles and 27 fired cartridge casings. Of the 29 gunshots fired, King was struck 11 times.

Philadelphia Police Officers Daniel Stevens and Justin Rios also received a radio call that gunshots were fired in the area of 2500 Cecil B. Moore Avenue. As they approached the area, they received additional information that two black men wearing dark colored hoodies were seen running southbound on 26th Street from Cecil B. Moore. Approximately three blocks from the scene, Officer Stevens spotted Wagner and another black male, both wearing hoodies. Officer Rios yelled, "Stop, police!" Wagner put his hands up and stopped. Officer Stevens frisked and handcuffed Wagner and asked him what he was doing. Wagner responded that he was trying to buy marijuana; however, he had no money in his possession. Wagner was transported to the Homicide Unit of the Philadelphia Police Department for investigation, but was subsequently released. A warrant was ultimately issued and Wagner was apprehended on September 29, 2010.

On February 6, 2013, after a consolidated trial, Wagner was convicted and sentenced to a mandatory life term for murder in the first degree, with concurrent sentences of 5 to 10 years' imprisonment for criminal conspiracy and 1 to 5 years' imprisonment for PIC. On February 11, 2013, Wagner filed

post-sentence motions, which the trial court denied on May 21, 2013. Wagner filed a timely notice of appeal on May 23, 2013.

On appeal, Wagner raises the following issues for our review:

1.    Is [Wagner] entitled to a new trial as a result of the trial court's ruling that prohibited him from cross-examining Commonwealth witness Amin Payne with regard to other shootings that he was involved in?

2.    Is [Wagner] entitled to a new trial as a result of the trial court's ruling that prohibited him from cross-examining Detective Phillip Nordo, Detective Gary White, and Police Officer William Golphin concerning the [Wagner's] statement and other interviews they conducted?

Appellant's Brief, at 4.

Both of Wagner's appellate issues challenge trial court rulings with respect to cross-examination of witnesses. The scope of cross-examination is within the discretion of the trial court and, absent an abuse of that discretion, an appellate court will not disturb the trial judge's rulings. **Commonwealth v. Pagan**, 950 A.2d 270, 285 (Pa. 2008) (citation omitted). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised it manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." **Commonwealth v. Bryant**, 67 A.3d 716, 726 (Pa. 2013), quoting **Commonwealth v. Eichinger**, 915 A.2d 1122, 1140 (Pa. 2007).

Wagner first asserts that he is entitled to a new trial because he was prohibited from cross-examining witness Payne. Wagner has failed to preserve this issue and, as such, it is waived.

Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). Here, counsel for Wagner's co-defendants argued vigorously to the trial court that they be allowed to question Payne about other shootings he allegedly committed, but was not convicted of, in order to show common plan, motive and intent. The court denied this request. However, at no time did Wagner's counsel join in that motion or argue to the trial court that he be permitted to examine Payne on the issue. Where an objection or motion is raised before the trial court by co-defendants, but not by the appellant himself, the appellant waives the issue on appeal. *Commonwealth v. Woods*, 418 A.2d 1346, 1352 (Pa. Super. 1980); *see also Commonwealth v. C.M.K.*, 932 A.2d 111, 113 (Pa. Super. 2007) ("Appellants were individually represented at trial; accordingly, the issue may have been preserved at trial by one defendant's counsel and not the other's."). Because Wagner himself did not preserve the issue, he has waived it.

Next, Wagner claims that the trial court erred by prohibiting him from cross-examining Detective Nordo, Detective White, and Officer Golphin regarding statements Wagner made to police during post-arrest interviews and as a result is entitled to a new trial. Specifically, in his statement to police, Wagner implicated Bryant and Payne in the shooting of King. Wagner

- 5 -

argues that these statements establish his defense that Payne shot and killed King. For the following reasons, this claim is meritless.

An accused has a fundamental right to present evidence, so long as the evidence is relevant and not excluded by an established evidentiary rule. ***Chambers v. Mississippi***, 410 U.S. 284 (1973). It is well-established that evidence that tends to show that someone else committed the crime for which an accused stands trial is relevant. ***See Commonwealth v. Boyle***, 368 A.2d 661 (Pa. 1976); ***Commonwealth v. McGowan***, 635 A.2d 113 (Pa. 1993); ***Commonwealth v. Rini***, 427 A.2d 1385 (Pa. Super. 1981).[4] However, evidence showing someone else committed the crime is only admissible if it is not precluded by an established evidentiary rule. ***Chambers***, ***supra***.

Here, Wagner's counsel acknowledged that he wanted to question Officer Golphin regarding his client's statements in order to bring the content of those statements before the jury without having to call Wagner to the stand. N.T. Trial, 2/04/13, at 92-93. Upon objection by the Commonwealth, the trial court disallowed the cross-examination of the

_____

[4] In support of this claim, Wagner cited multiple cases that involve a trial court's erroneous exclusion of relevant, admissible evidence proffered by defendants to prove that someone else committed the crime for which they were charged. ***See Boyle***, ***supra***; ***McGowan***, ***supra***; ***Rini***, ***supra***. Here, however, the evidence Wagner sought to admit was in clear violation of the hearsay rule and, accordingly, was inadmissible. These cases are therefore inapposite.

officers regarding Wagner's post-arrest statements because they were hearsay. Hearsay is a statement that (1) the declarant does not make while testifying in the current proceeding which (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Pa.R.E. 801(c). The hearsay rule is based on experience that untrustworthy evidence, out-of-court statements, should not be presented to the triers of fact because they lack reliability that could otherwise be established through cross-examination or statements made under oath. *Chambers*, 410 U.S. at 298. "A number of exceptions have developed over the years to allow the admission of hearsay statements made under circumstances that tend to assure reliability and thereby compensate for the absence of the oath and opportunity for cross-examination." *Id.* at 298-99. However, where a defendant seeks at trial to introduce his own statements made at the time of arrest to support his version of the facts, such testimony is clearly offensive to the hearsay rule. *Commonwealth v. Benson*, 10 A.3d 1268, 1274-75 (Pa. Super. 2010), citing *Commonwealth v. Murphy*, 425 A.2d 352 (Pa. 1981).

Here, Wagner's counsel sought to admit the content of Wagner's out-of-court statement for its truth, i.e., as proof that Bryant and Payne were the actual shooters. This self-serving statement is clearly violative of the hearsay rule and, as such, the trial court did not err in excluding it. *Benson*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/29/2015