J-A03045-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAHEED SMITH, | |
| Appellant | No. 3884 EDA 2016 |

Appeal from the Judgment of Sentence November 21, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0007787-2014

BEFORE: GANTMAN, P.J., McLAUGHLIN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED APRIL 16, 2018**

Appellant, Shaheed Smith, appeals from the judgment of sentence imposed following his jury conviction of aggravated assault, robbery, kidnapping, arson, possession of an instrument of a crime, and three counts of criminal conspiracy.[1] We affirm.

This case arises from the brutal robbery of Kevin Slaughter by Appellant and his four co-defendants, Timothy Gooden, Kylieff Brown, Christopher Cooley, and Kareem Cooley, after a chance meeting between Slaughter and Brown at the SugarHouse Casino. We take the relevant facts and procedural

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702, 3701, 2901, 3301, 907, and 903 respectively.

history from the trial court's April 17, 2017 opinion and our independent review of the certified record.

On December 8, 2013, at approximately 8:00 p.m., Slaughter ran into Brown, whom he knew from prison, at the casino. Brown and his cohorts set into motion an elaborate scheme to steal Slaughter's approximately $4,000.00 in winnings. During the protracted episode, they shot Slaughter multiple times, threw him into a van, beat him, contacted his wife to extract ransom, and set the van used in the incident on fire.

Police learned that Jeffrey Gray, Appellant's cousin, owned the subject van, a cleaning company vehicle with Soft Touch Carpet Cleaning written on the side of it. Gray gave a statement to police on the morning of December 9, 2013, and advised that he had observed Appellant driving the van the night before. Gray provided two cellphone numbers for Appellant: (267) 307-2119; and (215) 586-0759, a number to a phone Appellant had lost. While Gray was at the police station, he received a call from Appellant, who repeatedly asked him to report the van stolen.[2]

Police obtained search warrants for the defendants' cellphone records, which showed frequent contact between them immediately before, during, and

_____

[2] Police did not contemporaneously document the phone number from which Appellant placed this call. (**See** N.T. Suppression, 2/20/15, at 13, 21-23, 33).

after the crime.[3]  The Federal Bureau of Investigation (FBI) was able to reconstruct the conspirators' approximate locations throughout the crime using historical cell site data.[4]  Appellant was arrested on June 5, 2014.

On February 12, 2015, Appellant filed a motion to suppress the cellphone records pertaining to phone number (267) 307-2119, alleging that the affidavit of probable cause supporting the search warrant contained a material misstatement of fact, and that without this misstatement, there was no probable cause.  (**See** Amended Motion to Suppress, 2/12/15, at unnumbered pages 1-2).  The affidavit of probable cause states, in pertinent part:

> [The van involved in the incident] was registered to [Jeffrey] Gray.  [During his police interview he] relayed in summary that on 12/08/13, a family member by the name of [Appellant] was in possession of this van.  Gray observed [Appellant] with the van at Gray's residence between 10 and 11 pm on 12/8.  [Appellant] tried to park the vehicle at that location but was instructed to take the vehicle to its normal parking lot[.] . . . [Appellant], who was in the vehicle with another unknown black male left with another

---

[3] Cellphone records showed that, during the relevant time period, Cristopher Cooley's phone had ten contacts (calls or text messages) with a phone associated with Appellant (the number ending in 2119); Timothy Gooden's phone had nine contacts with the 2119 number and four contacts with the second phone number associated with Appellant.  (**See** N.T. Trial, 5/24/16, at 131-33, 165, 168).

[4] Special Agent William B. Shute of the FBI testified that historical cell site analysis is when investigators take the information contained in a phone's call detail records, which are generated as a result of its calls, and analyze the calls and depict them onto a map.  (**See** N.T. Trial, 6/01/16, at 40).  The analysis showed that the phone with the 2119 number associated with Appellant was at the approximate sites of the crime scenes.  (**See id.** at 78-80, 84-86).

vehicle following. While speaking with Det. [Robert] Schill, [Appellant] called Gray and told him to report the van stolen. **The phone number [Appellant] called from was 267-307-2119 which was found to be a T-Mobile phone number**. Gray identified [Appellant as the person] he observed in possession of the [v]an utilized to abduct the complainant during the time period the complainant was held captive. This van was subsequently located . . . on 12/09/13 at approximately 5 am. The vehicle was set ablaze by an unknown person. The fire was declared arson by the fire marshal.

(Affidavit of Probable Cause, 12/09/13, at 2-3) (emphasis added to identify contested statement).

The trial court held a hearing on the matter on February 20, 2015. Detective Robert Daly testified that phone records from T-Mobile for phone number (267) 307-2119 did not have any subscriber name or billing address associated with it; it was registered to no one. (*See* N.T. Suppression, at 37-38). Additionally, the phone records did not show a call from (267) 307-2119 to Jeffrey Gray during the time-period police interviewed him on the morning of December 9, 2013. (*See id.* at 38, 43). Defense counsel argued that, because the phone records did not show a call from (267) 307-2119 to Gray during this time-period, there was a material misstatement of fact in the affidavit of probable cause. (*See id.* at 41, 47, 50-52, 54). The Commonwealth countered that Appellant failed to establish that he had a reasonable expectation of privacy in a phone number not registered to him, and that there were no intentional misstatements of fact in the affidavit. (*See id*. at 55, 57). The trial court denied the suppression motion, based on its findings that Appellant lacked a reasonable expectation of privacy in the

- 4 -

cellphone number, and that issuance of the warrant was proper. (*See id.* at 60).

On June 13, 2016, a jury found Appellant guilty of the above-listed offenses. On November 21, 2016, the trial court sentenced him to an aggregate term of not less than fifteen nor more than thirty years' incarceration, followed by seven years of probation. On December 23, 2016, the court denied Appellant's timely post-sentence motion without a hearing. Appellant timely appealed.[5] He filed a timely, court-ordered concise statement of errors complained of on appeal on February 22, 2017, and the trial court entered an opinion on April 17, 2017. *See* Pa.R.A.P. 1925.

Appellant raises one question for our review: "Whether the [trial] court erred in failing to grant the motion to suppress the physical evidence?" (Appellant's Brief, at 4) (unnecessary capitalization omitted). Appellant argues that the statement at issue in the affidavit of probable cause, regarding Gray's receipt of a phone call from (267) 307-2119 during his police interview, was a material misstatement of fact rendering the search warrant invalid. (*See id.* at 11-12, 14). This issue does not merit relief.

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on

---

[5] Appellant filed his notice of appeal prior to the court's disposition of his post-sentence motion. Although the notice was premature when filed, we will regard this appeal as timely. *See* Pa.R.A.P. 905(a)(5).

questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Singleton*, 169 A.3d 79, 82 (Pa. Super. 2017) (citations

omitted).

> To prevail on a motion to suppress, the defendant must show that he has a privacy interest which has been infringed upon. . . .
>
> . . . A defendant moving to suppress evidence **has the preliminary burden of establishing** . . . **a legitimate expectation of privacy**. . . . A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. Whether defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion. The determination whether defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant.

*Commonwealth v. Benson*, 10 A.3d 1268, 1272 (Pa. Super. 2010), *appeal denied*, 24 A.3d 863 (Pa. 2011) (citations omitted; emphasis added).

> An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Commonwealth v. Newman*, 84 A.3d 1072, 1076-77 (Pa. Super. 2014), *appeal denied*, 99 A.3d 925 (Pa. 2014) (citation omitted).

With regard to the parties' respective burdens, our Supreme Court has

explained:

To be sure, under our jurisprudence, **the defendant bears the burden of persuasion with respect to his privacy interest**. However, the defendant's ability to meet this burden is not a prerequisite to the Commonwealth's initial burden of production, a burden it must satisfy in all cases. *See* Pa.R.Crim.P. 581 cmt. Rule 581(H) clearly states it is the Commonwealth's burden to present evidence that the defendant's constitutional rights were not infringed. The Commonwealth may concede the privacy interest, choosing to contest only the legality of police conduct; if it does so, the defendant's "reasonable expectation of privacy" need not be established. However, **if the evidence of the Commonwealth, the party with the burden of production, shows the defendant lacked such a privacy interest, the burden of establishing the contrary is on the defendant**.

. . . [I]n analyzing the merits of a suppression motion, the trial court may, indeed, treat the defendant's privacy interest as a "threshold" or "preliminary" matter. That is to say**, if the evidence shows there was no privacy interest, the Commonwealth need prove no more**; **in terms of the court's review, it need go no further if it finds the defendant has not proven a reasonable expectation of privacy**. However, as it relates to the parties' presentation of evidence, our cases and the Rules of Criminal Procedure make clear that the Commonwealth has the burden of production, to give the court evidence allowing that conclusion. Once it places the issue before the court, as a basis for denying suppression, the defendant may prove the contrary. If that proof is found to meet defendant's burden, then the search itself may be examined with the burden on the prosecution to show it was not unconstitutional.

*Commonwealth v. Enimpah*, 106 A.3d 695, 701-02 (Pa. 2014) (footnotes and some citations omitted; emphases added).

This Court's decision in **Benson**, **supra** is instructive. In that case, the defendant sought to suppress records related to a cellphone owned by his then-girlfriend and primarily used by him. **See Benson**, **supra** at 1271-72. The Court concluded:

. . . While appellant had use of the telephone, the bills in question were not his telephone bills. . . . Appellant had no legal right to request or control access to the information from the telephone company because he was not the owner of the telephone. He had no legitimate expectation of privacy in them.

. . . We hold that appellant has no legitimate expectation of privacy under either the United States Constitution or the Pennsylvania Constitution in the cellular telephone records for a telephone used by him but owned by a third party. Thus, there is no merit to appellant's claim that the trial court erred in failing to suppress the telephone records.

*Id.* at 1273-74 (some capitalization adjusted; emphasis omitted).

Here, at the suppression hearing, Detective Daly testified as follows on direct examination:

Q. . . . [D]id you receive back phone records from T-Mobile for the phone number 267-307-2119?

A. That's correct.

Q. Okay. **And when you received back the results of that search warrant, did it come back as the subscriber information to [Appellant]**?

A. **It did not**.

Q. Okay. Did it come back the subscriber information to anyone?

A. It did not.

Q. Okay. There was no name at all?

A. There was no name.

Q. No address?

A. No billing address and no name.

(N.T. Suppression, at 37-38) (emphases added).

After this exchange, which showed that Appellant lacked a privacy interest in the cellphone records, Appellant made no attempt to establish the contrary. **See Enimpah**, 701-02. He presented no evidence demonstrating his reasonable expectation of privacy in the cellphone or associated records. Therefore, we conclude that Appellant failed to meet his threshold burden with respect to establishing his privacy interest in a phone not registered to him. **See id.**; **see also Benson**, **supra** at 1272, 1274. Therefore, Appellant's sole issue on appeal does not merit relief.[6] Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

[6] Moreover, even if Appellant had demonstrated a legitimate expectation of privacy in the phone records, his claim would fail. We agree with the trial court that the misstatement in the affidavit of probable cause was immaterial in light of other information contained in the affidavit, and that there was no showing that the misstatement was deliberate. (**See** Trial Court Opinion, 4/17/17, at 30-32 (stating Detective Daly made reasonable inference from information provided by Mr. Gray that Appellant had two phones (numbers (267) 307-2119 and (215) 586-0759), and had lost the 0759 number)); **see also Commonwealth v. Baker**, 24 A.3d 1006, 1017 (Pa. Super. 2011), *aff'd*, 78 A.3d 1044 (Pa. 2013) (every inaccuracy in an affidavit of probable cause does not justify exclusion of evidence; misstatements of fact will invalidate search warrant only if they are deliberate and material).

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/16/18