J-A02035-16

2016 PA Super 114

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC JAY LEED | : | |
| | : | |
| Appellant | : | |
| | : | No. 1231 MDA 2015 |

Appeal from the Judgment of Sentence July 16, 2015
in the Court of Common Pleas of Lancaster County Criminal Division
at No(s): CP-36-CR-0002136-2014

BEFORE: PANELLA, STABILE, and FITZGERALD,[*] JJ.

OPINION BY FITZGERALD, J.:                              **FILED JUNE 01, 2016**

Appellant, Eric Jay Leed, appeals from the judgment of sentence of twenty to sixty months' imprisonment imposed in the Lancaster County Court of Common Pleas for possession with intent to deliver[1] marijuana ("PWID"). He claims a statement that a canine sweep was conducted one year before the application for a search warrant requires all evidence against him be suppressed. We hold that a reviewing court (1) may consider the entirety of the affidavit of probable cause to determine whether the challenged statement constitutes a typographical error and (2) find a substantial basis supports the issuing authority's probable cause determination, notwithstanding that error. We thus affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

The relevant facts of this case follow. On March 21, 2014, Detective Anthony Lombardo of the Lancaster County Drug Task Force applied for and executed a search warrant for Appellant's storage unit. Detective Lombardo's affidavit of probable cause set forth the following relevant allegations, which we reproduce with minor alterations:

> 3. That during the month of September 2012, your Affiant spoke with a Reliable Confidential Informant (CI#1), whose information has led to at least (2) prior arrests and convictions for felony violations of the PA Controlled Substance, Drug, Device, and Cosmetic Act.. CI#1 related that he/she has knowledge of a white male, [Appellant], who is in the business of selling large amounts of powder cocaine and Marijuana in the Lancaster City area. CI#1 additionally related that [Appellant] lives at 1223 Union St. Lancaster. CI#1 knew this information to be true because he/she had purchased cocaine from [Appellant] as recently September 2012. CI#1 has demonstrated his/her knowledge of controlled substances, to specifically include cocaine and Marijuana, its packaging, pricing and terminology.
>
> 4. That during the month of September 2012, your Affiant obtained a PENNDOT photograph of [Appellant, which] CI#1 positively identified . . . as being same individual known to him/her as described in paragraphs #3.
>
> 5. That during the month of February 2014, Det. Gregory Macey of the Lancaster County Drug Task Force, spoke with a Reliable Confidential Informant (CI#2), whose information has led to at least (1) prior arrest and conviction for felony violations of the PA Controlled Substance, Drug, Device, and Cosmetic Act.. CI#2 related that he/she has knowledge of a white male, [Appellant], who is in the business of selling large amounts of powder cocaine and Marijuana. CI#2 has demonstrated his/her knowledge of controlled substances, to specifically include Cocaine and Marijuana, its packaging, pricing and terminology.

6. That during the month of February 2014, Det. Greg Macey of the Lancaster County Drug Task Force obtained a PENNDOT photograph of [Appellant, which] CI#2 positively identified . . . as being same individual known to him/her as described in paragraphs #5.

7. That during the month of March 2014, Agents from the Drug Enforcement Administration Harrisburg Resident Office spoke with a citizen in good standing within the community. The named citizen, who wished to remain anonymous, stated that [Appellant] was making frequent short term trips to storage unit #503 located within Lanco Mini Storage located at 1813 Old Philadelphia Pike, Lancaster, PA.

8. That on 21 March 2014, Michael Neff of the Drug Enforcement Administration spoke with the manager of Lanco Mini Storage. The manager advised that [Appellant] is the sole lessee of unit #503 at Lanco Mini Storage located at 1813 Old Philadelphia Pike, Lancaster, PA and has been so since renting the unit in August 2013. The manager further stated that the last time that Leed accessed the unit was on March 20, 2014.

9. That Off Billiter of the Manheim Township Police Department, attended a six week handler and K9 certification course in Canada conducted by Baden K9 in Apr-May 2008. Both handler and K9 receive re-certifications and twice monthly training. They have attended courses and certifications of both handler and K9 to include[ a Baden K9 Patrol & Narcotics recertification on December 9, 2008, and numerous other certifications between December 8, 2010, and February 24, 2012].

10. That on March 21, 2013, your Affiant requested Officer Billiter and his K9 partner Ruger, of the Manheim Twp Police Department to conduct K9 sweep of unit #503 at Lanco Mini Storage located at 1813 Old Philadelphia Pike, Lancaster, PA for the presence of narcotics. At approx. 1644 hrs, Officer Billiter and K9 Ruger conducted a sweep of random storage units to include unit#503. Each and every time Ruger alerted on unit#503 and Officer Billiter advised your Affiant that K9 Ruger had alerted on the unit, indicating the presence of narcotics.

> 11. That your Affiant respectfully requests that a Search Warrant be granted for Unit#503 located at Lanco Mini Storage, 1813 Old Philadelphia Pike

Aff. of Probable Cause, 3/21/14, at ¶¶ 3-11. An assistant district attorney approved the warrant application. Appl. for Search Warrant and Authorization, 3/21/14, at 1. A magisterial district judge issued a search warrant at 7:00 p.m. on March 21, 2014. *Id.*

Officers searched Appellant's storage unit at 7:11 p.m. that same day and seized approximately fifteen pounds of marijuana, $9,900, plastic bags, and a scale. *See* N.T. Trial, 5/4/15, at 12-13. Additionally, officers discovered Appellant's personal documents, including a bank statement and an income tax return, inside the unit. *See* Aff. of Probable Cause, 3/23/14, at ¶ 3. Relying, in part, on the evidence from the storage unit, officers obtained a second search warrant for Appellant's bank records on March 23, 2014. *See id.* at ¶¶ 3, 9.

On March 31, 2014, Detective Lombardo filed a criminal complaint charging Appellant with PWID.[2] Appellant was arrested on April 2, 2014. On April 4, 2014, officers obtained a third search warrant for Appellant's mother's residence. The issuance of the third warrant was based on the evidence obtained from the previous two searches, as well as a recorded

---

[2] Appellant was also charged with possession of paraphernalia, 35 P.S. § 780-113(a)(32), but that charge was withdrawn before the filing of the information.

telephone conversation between Appellant and his mother while Appellant was in the county jail. *See* Aff. of Probable Cause, 4/4/14, at ¶¶ 3, 14, 15. The third search warrant resulted in the seizure of an additional $8,900 and a cellphone from a safe in his mother's residence.

On July 8, 2014, Appellant filed an omnibus pretrial motion, which included a motion to suppress the evidence from his storage unit. On November 24, 2014, the trial court convened a suppression hearing. Appellant's counsel argued the March 21, 2014 warrant for his storage unit was "stale" and "the affidavit of probable cause fail[ed] to state specifically enough information to warrant the [magisterial district judge] to issue the search warrant." N.T., 11/24/14, at 3-4. Appellant's argument focused on Paragraphs 3, 4, and 10 of the affidavit of probable cause. *See id.* at 4. The trial court summarized Appellant's "staleness issues" as "the indication on the search warrant that it was March 21, **2013** that the K-9 search was conducted[.]" *Id.* (emphasis added). Counsel further claimed the defect in the March 21 warrant tainted the evidence recovered under the subsequent warrants for his bank account and his mother's home. *See id.*

The Commonwealth, over Appellant's objection, called Detective Lombardo to testify that the canine sweep occurred on "March 21, **2014**, the same day that [the detective] completed the search warrant or application." *Id.* at 4-5, 7 (emphasis added). When asked by the Commonwealth whether the March 21, 2013 date in the affidavit of probable cause was "a

- 5 -

typographical error," the detective replied, "Yes." *Id.* at 7. Appellant did not cross-examine the detective or present further evidence. The court ordered the parties to submit briefs, and both parties complied.

On February 23, 2015, the trial court denied Appellant's suppression motion. The court concluded it would not consider Officer Lombardo's testimony at the suppression hearing. Trial Ct. Op., 2/23/15, at 6-7 & n.5. Nevertheless, it found that "when reviewing the four corners of the application in a common sense and realistic fashion, it is clear that the K9 sweep took place on March 21, 2014 and that the indication that it occurred on March 21, 2013 reflects an obvious typographical error." *Id.* at 11. The court cited numerous cases in which our courts "have infused common sense into their review of affidavits submitted in support of search-warrant applications." *Id.* at 8-10. The court acknowledged the case law was not "precisely on-point with the facts of the instant case . . . ." *Id.* at 11. However, it applied "guiding principles" to determine the existence of a typographical error and find the canine sweep occurred on March 21, 2014, the same day Detective Lombardo applied for the first search warrant. *Id.* Thus, the court determined that "the magist[erial] district judge . . . could reasonably have concluded that there was sufficient probable cause to issue the warrant" to search Appellant's storage unit. *Id.*

On May 4, 2015, Appellant proceeded to a stipulated nonjury trial at which the trial court found him guilty. On July 16, 2015, the court

sentenced Appellant to twenty to sixty months' imprisonment for PWID and granted his motion for bail pending appeal. Appellant timely filed a notice of appeal and complied with the court's order to submit a Pa.R.A.P. 1925(b) statement.

Appellant presents the following question for review:

> Whether the [trial] court erred as a matter of law when it determined a magisterial district justice had a substantial basis to conclude that the affidavit of probable cause for a storage unit warrant contained sufficient facts amounting to probable cause when any finding of probable cause required ignoring or changing an explicit date contained in the warrant's affidavit?

Appellant's Brief at viii.

Appellant presents three arguments in support of his claim of error. First, he contends "the affidavit of probable cause for the [March 21, 2014] warrant at issue [did] not provide probable cause to believe, at the time of its issuance, that contraband would be located at [his] storage unit . . . ." *Id.* at 18. Appellant observes "the **only** allegation of any sales being made to a specific informant" was two years old. *Id.* at 15. Further, the face of the March 21, 2014 affidavit of probable cause indicated that the canine sweep occurred in March **2013**, which was (1) "prior to when Appellant was even the lessee of the unit[,]" (2) "without any suspicion related to the storage unit itself or a connection to Appellant[,]" and (3) "one year prior to the application and issuance of the search warrant." *Id.* The remaining allegations from February and March 2014, he notes, consisted of general

- 7 -

reports that he was selling drugs, regularly visited the storage unit, and was the lessee of the unit. *Id.* at 16-17. Thus, Appellant claims the allegations were stale and did "not provide specific information regarding the presence of contraband at the storage at the time the warrant was issued." *Id.* at 16.

Second, Appellant contends there was "no specific factual support contained within the affidavit's four corners to conclude exactly when or if a canine sweep was conducted at any time other than was explicitly and specifically represented in the affidavit of probable cause." *Id.* at 20. He emphasizes that the contents of the affidavit must be "**sworn to** before the issuing authority" and taken as true. *Id.* at 19-20 (citing Pa.R.Crim.P. 203(B)). Therefore, he asserts an issuing authority—and implicitly, a reviewing court—cannot be permitted to "edit the contents of an affidavit." *Id.* at 20. He further suggests that "permitting a magist[erial district judge] to act as a rubber stamp for the Commonwealth by allowing [the issuing authority] to 'gloss over' an affidavit's contents and simply issue a warrant would deny [a defendant's] state and federal protections." *Id.* at 20, 27. Appellant also distinguishes the case law regarding omissions and mistakes cited by the trial court. *Id.* at 22-24. In so doing, he proposes that a court may "fill gap(s) left by omitted information," but cannot "edit or change" the allegations to find probable cause. *Id.* at 24.

Third, in a single paragraph, Appellant states the search warrants for his bank account and his mother's residence were tainted by the illegality of

the March 21st warrant. *Id.* at 27. He concludes that "the warrants subsequently executed on [his] savings account and on his familial residence were direct results of the seizures occurring from the storage unit search on March 21, 2014." *Id.*

The Commonwealth responds by citing the principle that "[a] search warrant affidavit 'is to be tested by the court with a common sense and a realistic manner, and not subjected to overly technical interpretations; the magistrate's determination of probable cause is to be accorded great deference on review.'" Commonwealth's Brief at 9 (citations omitted). Further, it notes this Court has held that "'[t]he chronology established by the affidavit of probable cause must be evaluated according to a common sense determination.'" *Id.* (citations omitted). According to the Commonwealth, "[c]ase law supports the [trial] court's reasoning" and the court properly interpreted the chronological indicators in the affidavit of probable cause to conclude that "the K9 sweep took place on March 21, 2014" and "the indication that it occurred on March 21, 2013 reflects an obvious typographical error." *Id.* at 10 (citing Trial Ct. Op. at 11-12).

For the reasons that follow, we discern no error of law in the trial court's use of a common sense and realistic approach to conclude that probable cause existed within the four corners of the challenged affidavit. *See* Trial Ct. Op. at 11. Furthermore, the record supported the court's factual findings that the reference to "March 21, 2013" was a typographical

error and the canine sweep occurred on March 21, 2014. We reject Appellant's suggestion that the requirement that the affiant swear to the statements in the affidavit precludes a reviewing court from (1) discerning the existence of a typographical error and (2) evaluating the circumstances surrounding the error to determine an issue of fact material to probable cause.

The following precepts govern our review:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. . . . Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa. Super. 2012) (citation omitted).

"Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Id.* at 362.

> [A]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness.

> The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence.

*Id.* at 363 (citation and emphasis omitted).

As to Appellant's initial staleness claim, the record reveals the allegations from 2014 included a confidential informant's report that "he/she ha[d] knowledge of [Appellant], who is in the business of selling large amounts of powder cocaine and Marijuana." Aff. of Probable Cause, 3/21/14, at ¶ 5 (relating the report of "CI#2"). A citizen also reported that Appellant "was making frequent trips" to his storage unit. *Id.* at ¶ 7. Police obtained information that Appellant was the sole lessee of the unit since August 2013 and last accessed the unit on March 20, 2014. *Id.* at ¶ 8. However, the last reported observation of Appellant selling a controlled substance dated back to September 2012. *Id.* at ¶ 3 (asserting "CI#1 knew this information to be true because he/she had purchased cocaine from [Appellant] as recently September 2012").

Therefore, had the canine sweep occurred on March 21, **2013**—five months before Appellant leased the unit and one year before the application for the search warrant—the logical connection between Appellant's alleged criminal conduct in 2014 and the possibility that his storage unit contained evidence would be untenable. Accordingly, Appellant's first argument—that the information **on the face** of the affidavit was stale—has arguable merit.

Further, the timing of the canine sweep constitutes an issue of fact material to the question of probable cause.[3]

We thus turn to the crux of this appeal, namely, the trial court's determinations that the March 21, 2013 date was a typographical error and the magisterial district judge could find probable cause notwithstanding that error. As noted by the parties and the trial court, there is ample case law holding that a warrant may be upheld notwithstanding (1) a magisterial district judge's typographical errors, *see Commonwealth v. Swint*, 389 A.2d 654, 656-57 (Pa. Super. 1978) (discussing error in the magisterial district judge's dating of the issuance of the warrant); *Commonwealth v. Chinea*, 371 A.2d 944, 945-46 (Pa. Super. 1977) (same), (2) incorrect addresses of the places to be searched, *see Commonwealth v. Washington*, 858 A.2d 1255, 1247-48 (Pa. Super. 2004) (discussing error in the affiant's notation of the address of the premises to be searched); *Commonwealth v. Belenky*, 777 A.2d 483, 487 (Pa. Super. 2001) (same), or (3) omissions regarding the timeframe of the alleged criminal activity. *See Commonwealth v. Baker*, 518 A.2d 802, 804 (Pa. 1986) (discussing omissions regarding when an informant observed criminal activity); *Commonwealth v. Murphy*, 916 A.2d 679, 685-86 (Pa. Super. 2007) (same); *Commonwealth v. Haggerty*, 564 A.2d 1270, 1271 (Pa. Super.

---

[3] Indeed, the Commonwealth does not argue that probable cause could be found even if Detective Lombardo's references to the canine sweep were omitted.

1989) (same); *accord Commonwealth v. Ruey*, 892 A.2d 802, 811, 815 (Pa. 2006) (applying "common-sense distinction between the absence of probable cause and the mere lack of a full and complete articulation of the same" to hold affiant's omissions of references regarding the credibility and reliability of EMS personnel and hospital at which the defendant was admitted did not negate the magisterial district judge's probable cause determination).

However, as Appellant and the trial court recognized, the above-cited cases involved (1) "technical" errors that did not affect the issuing authority's determination of probable cause, (2) omissions resolved upon the presumption that the underlying allegations of criminal activity were recent, and (3) errors that were cured by other allegations in the affidavit of probable cause. Those differences, however, do not give rise to a meaningful legal distinction in light of the guiding principles governing a probable cause determination.

The Pennsylvania Supreme Court, in *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985), adopted the "more practical" test for probable cause set forth by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983). *See Gray*, 503 A.2d at 925-26 (discussing *Gates*, *Spinelli v. United States*, 393 U.S. 410 (1969), and *Aguilar v. Texas*, 378 U.S. 108 (1964)). Recognizing that probable cause is based on "the factual and practical considerations of everyday life on which reasonable and prudent

men, not legal technicians, act," both the United States and the Pennsylvania Supreme Courts have emphasized that "probable cause determinations must be based on common sense non-technical analysis." *See id.* (citations and quotation marks omitted).  Thus,

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing] that probable cause existed."

*Id.* (quoting *Gates*, 462 U.S. at 238-39).

Moreover, the United States Supreme Court recognized "the informal, often hurried context in which [a test for probable cause] must be applied . . . ." *See Gates*, 462 U.S. at 236.

> [A]ffidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation.  Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area.  Likewise, search and arrest warrants long have been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature of probable cause.

*Id.* at 235 (citations and quotation marks omitted).

Further,

> after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review.  A magistrate's determination of probable cause should be paid great deference by reviewing courts.  A grudging or

- 14 -

negative attitude by reviewing courts toward warrants[ ] is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.

*Id.* at 236 (citations and quotation marks omitted).

Instantly, Paragraphs 1 and 2 of the affidavit of probable cause recited the qualifications of the affiant, Detective Lombardo, and the general practices of "[p]ossessors and sellers of illegal drugs." Aff. of Probable Cause, 3/21/14, at ¶¶ 1-2. However, Paragraphs 3 and 4 referred to the report by CI#1 and the identification of Appellant in September of 2012. *Id.* at ¶¶ 3-4. Notably, the reference to the canine sweep did not follow the information obtained in September of 2012.

Paragraphs 5 and 6 referred to the reports by CI#2 and the identification of Appellant in February 2014. *Id.* at ¶¶ 5-6. Paragraph 7 contained the a citizen's report, in March of **2014**, that Appellant made numerous trips to the storage unit. *Id.* at ¶ 7. Paragraph 8 stated an investigator spoke with the manager of the storage facility on March 21, **2014**, and confirmed Appellant was the lessee of the storage unit since August of 2013. *Id.* at ¶ 8.

Paragraph 9 was an anomaly. Similar to Paragraphs 1 and 2, however, Paragraph introduced the magisterial district judge to a police officer, Officer Billiter, and recited his qualifications to conduct a canine

sweep. *Id.* at ¶ 9. Paragraph 9 also contained an extensive recitation of the certifications Officer Billiter received between 2008 and 2012. *Id.*

In Paragraph 10, Detective Lombardo alleged that Officer Billiter and his canine partner, Ruger, conducted a sweep around the storage unit. *Id.* at ¶ 10. Paragraph 10 contained the language at issue in this appeal: "on March 21, **2013**, your Affiant requested Officer Billiter and his K9 partner Ruger, of the Manheim Twp Police Department to conduct K9 sweep . . . ." *Id.* That sweep occurred at 4:44 p.m., and Ruger alerted to the presence of narcotics. *Id.*

Notably, the essential allegations regarding Appellant's criminal activity in Paragraphs 3 through 8 and 10 were set forth in chronological order. *See id.* at ¶¶ 3-8, 10. Paragraph 10, however, was the only paragraph containing an express reference to the time of day when an event occurred. *See id.* at ¶ 10. Moreover, it was the final substantive paragraph before the request for the warrant in Paragraph 11.

The trial court's finding that Detective Lombardo's statement the canine sweep occurred on March 21, 2013, was a typographical error is thus supported by an application of common sense. *See Gates*, 462 U.S. at 238; *Gray*, 502 A.2d at 925-26. It is reasonable to believe the error escaped detection by the detective, the reviewing assistant district attorney, and the magisterial district judge, in light of chronological structure of the affidavit and its placement on the last page of the affidavit immediately before the

request for the warrant. Considering "the informal, often hurried context" of the application process, we do not fault the parties for overlooking the error. *Cf. Gates*, 462 U.S. at 236.

We also agree with the trial court that the affidavit of probable cause contained sufficient chronological milestones to believe that the canine sweep occurred immediately before Detective Lombardo applied for and obtained the search warrant at 7:00 p.m., on March 21, 2014. The allegations, as well as the indication that the sweep occurred at a specific time, all suggest that the canine sweep was the final event before the detective sought the search warrant. Indeed, it would defy common sense to believe Detective Lombardo squandered police resources on a sweep of the storage unit in March 2013, one year before the allegations Appellant was visiting his storage unit frequently and the March 21, 2014 interview of the facility's manager that confirmed Appellant's link to the specific unit.

Thus, we discern no abuse of discretion or error in the trial court's conclusions that the reference to "March 21, 2013" was a typographical error and that the error did not invalidate the warrant. *See Gates*, 462 U.S. at 235-36, 238-39. The court was entitled to consider the totality of the circumstances set forth in the affidavit of probable cause. *See id.* at 238-39; *Gray*, 503 A.2d at 925. As the record supports the court's findings of fact and its conclusion that the issuing authority had a substantial basis

reveals no error of law, we discern no basis to disturb the court's determinations. *See Hoppert*, 39 A.3d at 361-62.

As to Appellant's remaining arguments, we find his reliance on the "sworn to" requirements of the affidavit unpersuasive. Appellant's suggestion that the presumption that an affiant's allegations must be considered true to preclude a court from recognizing a typographical error is hypertechnical. Moreover, it fails to accommodate for the practical considerations that underlie the well-settled common sense approach. *See Gates*, 462 U.S. at 235-36. Similarly, Appellant's argument that the trial court's recognition of typographical errors diminishes the role of the issuing authority as a neutral arbiter is belied by the precept that a reviewing court should not take a grudging approach to warrants. *See id.* at 236. Indeed, where, as here, the circumstances suggest the error was overlooked, Appellant's assertions that the issuing authority abdicated its proper role as a neutral arbiter and acted solely as a "rubber stamp" are baseless.

Finally, because Appellant has not demonstrated that the March 21, 2014 search warrant was improperly issued, no relief is due on his claim that the subsequent two warrants for his bank account and his mother's residence were tainted.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/2016