J-S32007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PHILLIPS PITTS, | |
| Appellee | No. 2360 EDA 2015 |

Appeal from the Order July 15, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005714-2011

BEFORE:  BOWES, MUNDY AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 22, 2016**

The Commonwealth appeals from the July 15, 2015 order finding that a search warrant utilized to search the residence of Appellee, Phillips Pitts, was not supported by probable cause and suppressing the fruits of that search.  We reverse.

We first set forth the principles that inform our review.  When the Commonwealth appeals from an order granting suppression, we consider the defense evidence and the evidence from the prosecution that, in the context of the entire record, remains uncontradicted. ***Commonwealth v. Carter***, 105 A.3d 765 (Pa.Super. 2014).  If supported by the record, the suppression court's factual findings bind us, but this Court is not obliged to accept the suppression court's conclusions of law.

_____

* Retired Senior Judge assigned to the Superior Court.

In this case, we are examining a suppression court's holding that the facts contained in a search warrant's affidavit did not justify its issuance. A search warrant is valid when the facts in the affidavit establish the existence of probable cause. *Commonwealth v. Leed*, 2016 WL 3135662 (Pa.Super. 2016). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution" to believe that a search should be conducted. *Id*. at *5 (citation omitted). Probable cause is determined by the magisterial district judge who issued the warrant, and must be ascertained based upon a practical approach and pursuant to a common sense, non-technical analysis. *Id*. at *7. The magisterial body decides, based upon the facts in the affidavit itself, if "there is a fair probability that contraband or evidence of a crime will be found in a particular case." *Id*. (citation omitted). Probable cause must be established based solely upon "the information within the four corners of the affidavit submitted in support" of issuance of the warrant. *Commonwealth v. Burgos*, 64 A.3d 641, 656 (Pa.Super. 2013) (citation omitted). Once that determination is rendered by the magisterial district judge, the warrant may be issued.

The suppression court, as a reviewing court of the magisterial decision, "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Leed*, *supra* at *7 (citation

omitted). Thus, the court of common pleas does not engage in *de novo* review and must grant great deference to the magisterial district judge's finding that an affidavit sets forth facts establishing probable cause. ***Id***. The suppression court cannot invalidate a warrant through a hyper-technical interpretation of the facts. ***Id***. When this Court examines the contents of the affidavit supporting the warrant, we utilize the same standard of review as the court of common pleas and accord great deference to the magisterial body that issued the warrant. It is a question of law as to whether an affidavit supports the magisterial determination that there is probable cause, *i.e.*, a fair probability that contraband or evidence of a crime would be found at the described location. ***Commonwealth v. Coleman***, 830 A.2d 554 (Pa. 2003). Thus, in this case, we owe no deference to the suppression court's legal determination that the affidavit herein was insufficient to establish probable cause to search Appellee's residence.

In accordance with the foregoing precepts, we now review the facts contained in the four corners of the affidavit utilized to obtain the search warrant herein. On January 25, 2011, two Philadelphia Police Officers received information that drugs were being sold in the vicinity of Ella and Mayfield Streets, Philadelphia, and conducted surveillance there. They observed the following. An unidentified male ("unidentified male") continually entered and exited 243 East Mayfield Street, and handed small items from a black plastic bag in exchange for cash to numerous people who

approached him briefly. Police then utilized a confidential informant ("CI") and observed the CI purchase PCP from the unidentified male on Mayfield Street.

Officers continued their surveillance. At approximately 6:30 a.m. on February 1, 2011, a tan Suburban parked on Ella Street near Mayfield Street. The unidentified male approached that vehicle, received a black bag from the driver, Curtis Coates, and placed the bag on the steps of 243 East Mayfield Street. From 6:45 to 7:15 a.m., the unidentified male engaged in numerous hand-to-hand transactions of small items for cash with various people. Then, the unidentified male returned to the Suburban, took a small item from Coates, went to 243 East Mayfield Street, and placed that item in the black bag. He then sold something to another pedestrian.

On February 2, 2011, police began surveillance of the Suburban, which was located in the rear alley of property at 345 Roosevelt Boulevard. At 7:00 a.m., police followed that vehicle to the area of Ella and Mayfield Streets. The unidentified male again received a back bag from the Suburban's driver, and resumed making what police concluded were narcotics sales with numerous pedestrians on Mayfield Street. At 7:30 a.m., the Suburban returned to the alley behind 345 East Roosevelt Boulevard. Later in the afternoon of February 2, 2011, the CI purchased heroin from the unidentified male on East Mayfield Street.

Police remained in their lookout positions on East Mayfield Street. At about 3:30 p.m. on February 2, 2011, Appellee, who is referred to as unidentified male number two in the affidavit, arrived at 243 East Mayfield Street in a black Ford F-150 pickup truck, met with the unidentified male, handed him a large black bag, and then re-entered his pickup truck. The unidentified male took the bag into 243 East Mayfield Street.

At around 7:00 a.m. on the following day, February 3, 2011, Coates again traveled to 243 East Mayfield Street. The unidentified male entered Coates' Suburban, and, after a few minutes, the unidentified male returned to 243 East Mayfield Street and began to sell small items for cash on the street to various pedestrians.

In the meantime, police began surveillance of Appellee. At around 11:30 a.m., on February 3, 2011, Appellee exited 4166 Paul Street, drove to the 200 block of East Mayfield Street, and handed a large black bag to the unidentified male, who took it inside 243 East Mayfield Street. Appellee then returned to 4166 Paul Street and entered that location. Later that day, Appellee went back to 243 East Mayfield Street, and entered it. The unidentified male was on the porch when Appellee arrived. The CI approached and spoke with him. The unidentified male went inside 243 East Mayfield Street, and Appellee then exited 243 East Mayfield Street. Appellee sold PCP, which he retrieved from a black bag, to the CI. Appellee then returned to 4166 Paul Street, where police observed a white garage that

appeared to be storage container attached to that house. Since PCP is caustic, police suspected that it was being mixed and stored in the garage. Based on this information, the magisterial district judge issued a search warrant for 4166 Paul Street, and, during its execution, police discovered seventy grams of PCP and drug packaging material.

In concluding that the warrant failed to set forth probable cause to search 4166 Paul Street, the suppression court opined that there was no nexus between 4166 Paul Street and the drugs being sold by the unidentified male and Appellee on East Mayfield Street. The suppression court ruled that police had no reason to conclude that drugs would be found in 4166 Paul Street. This appeal followed the court's suppression of the PCP and packaging material found at that location.

The Commonwealth assails the suppression court's conclusion that the affidavit failed to set forth facts supporting the police's belief that there was a fair probability that drugs would be located at 4166 Paul Street. As noted, we accord no deference to the suppression court's legal determination that the affidavit did not support the existence of probable cause to search 4166 Paul Street. Instead, we, as the suppression court should have, accord great deference to the magisterial determination that the affidavit did, in fact, establish that there was a fair probability that drugs would be found at 4166 Paul Street. We also view the facts set forth in the affidavit in a common sense and practical fashion.

We first note the following. On three separate days, police observed the unidentified male engage in numerous drug transactions on East Mayfield Street. The behavior of Appellee and Coates, viewed in a logical manner, establishes that they were supplying the unidentified man with those drugs. While the fact that Appellee was a drug supplier does not necessarily mean that he was storing those drugs at 4166 Paul Street, we conclude that the following event is critical in the probable cause equation. On February 3, 2011, Appellee left 4166 Paul Street, traveled to 243 East Mayfield Street, and handed a black bag to the unidentified male. The unidentified man, as established through sales to the CI, was selling PCP and heroin from black bags. That same day, Appellee sold PCP to the CI and took it from a black bag. The previous day, Appellee also delivered a black bag to the unidentified man. While there was no indication where Appellee stored his drugs based upon what police saw on February 2, 2011, this missing information was supplied by police surveillance conducted on February 3, 2011. On that day, Appellee left 4166 Paul Street to make his conveyance of the contraband to the unidentified man. Additionally, 4166 Paul Street had a structure suitable for mixing and storing PCP.

In **Commonwealth v. Clark**, 28 A.3d 1282 (Pa. 2011), the defendant left his residence, traveled to another location, made a drug sale, and then returned to his residence. Our Supreme Court held that this sequence of events "connected the illegal transaction to [the defendant's] residence,"

supporting the magisterial determination "that drugs would likely be found in the residence." *Id*. at 1291. Appellee performed precisely these same actions on February 3, 2011. He left 4166 Paul Street, gave a black bag to the unidentified man, and that man took it inside 243 East Mayfield Street. The affidavit established that the unidentified man was a street-level drug dealer, that he procured and sold those drugs from black bags delivered by his suppliers, and that he stored his drugs at 243 East Mayfield Street. Thus, when all of the facts set forth in the affidavit are viewed in their totality and with common sense, it is evident that Appellee delivered drugs on February 3, 2011, and that he traveled from 4166 Paul Street to perform that action. Under *Clark's* rationale, there was a sufficient nexus between Appellee's drug activity and 4166 Paul Street. The magisterial district judge properly found that there was a fair probability drugs would be therein.

We conclude that the suppression court erred in applying *Commonwealth v. Davis*, 310 A.2d 334 (Pa.Super. 1973). Therein, a warrant was issued based solely upon the fact that the defendant was a reputed drug dealer who was visited by other supposed drug dealers, and police never even saw any drug sales. There were no events supporting a belief that any drugs would be at Davis' residence. In this case, police observed, on three different days, the unidentified male make a plethora of street sales of drugs, and the CI purchased narcotics from both Appellee and that unidentified male. Additionally, police observed Appellee leave 4166

Paul Street and deliver PCP to the street dealer. The **Davis** decision is inapposite herein.

We also conclude that the suppression court's application of **Commonwealth v. Kline**, 335 A.2d 361 (Pa.Super. 1975) and **Commonwealth v. Way**, 492 A.2d 1151 (Pa.Super. 1985), was misguided. In those two cases, we held that there was not a sufficient basis to search each defendant's home in that police did not view the defendant travel from his residence to the location of the drug sales that the defendants conducted. We noted in those cases that the fact that a defendant is a criminal does not mean that contraband will be found in his residence. Herein, the totality of the circumstances, and, most crucially, the police's observation of Appellee leaving 4166 Paul Street immediately before he proceeded to deliver narcotics, compels affirmance of the magisterial determination that there was a fair probability that drugs would be located in 4166 Paul Street.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/22/2016

- 9 -