J-S54006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRUCE GERGERICH, | |
| Appellant | No. 1129 WDA 2015 |

Appeal from the Judgment of Sentence Entered December 19, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013138-2012

BEFORE: BENDER, P.J.E., OTT, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED SEPTEMBER 09, 2016**

Appellant, Bruce Gergerich, appeals *nunc pro tunc* from the judgment of sentence of 18 to 36 months' imprisonment, followed by 5 years' probation, imposed after he was convicted of one count of possession of a controlled substance, 35 P.S. § 780-113(a)(16), and two counts of possession with intent to deliver a controlled substance, 35 P.S. § 780-113(a)(30). Appellant solely challenges the trial court's denial of his pretrial motion to suppress evidence. After careful review, we affirm.

Appellant was charged with the above stated offenses in 2012. Prior to his trial, Appellant filed a motion to suppress drug evidence recovered from his person after he was stopped and frisked by police. A suppression hearing was conducted on May 14, 2013, at the close of which the court denied Appellant's suppression motion. Appellant's case immediately

proceeded to a non-jury trial and the court convicted Appellant of the three counts with which he was charged. Appellant was initially sentenced on August 8, 2013, but he was subsequently resentenced on December 19, 2013, to the aggregate term stated *supra*.

Appellant did not file a post-sentence motion or a direct appeal. However, on August 26, 2014, he filed a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, seeking the restoration of his direct appeal rights. The PCRA court granted Appellant's petition on June 22, 2015, and Appellant filed this *nunc pro tunc* appeal on July 22, 2015. Appellant also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the court filed an opinion on February 11, 2016. Herein, Appellant presents the following issue for our review:

> I. Did the court err when it did not grant the suppression motion when the search and seizure of [Appellant] was illegal and without probable cause in that the police officer, while sitting 100 feet from him, did not witness any illegal activity or that [Appellant] had committed any crimes, in that the police only witnessed two men in a car, shaking hands?

Appellant's Brief at 4.

> It is well-settled that,

> [o]ur standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record

- 2 -

as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783–84 (Pa. Super. 2012) (quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361–62 (Pa. Super. 2012) (citation omitted)).

Briefly, Appellant challenges the legality of his stop by police, as well as the lawfulness of a pat-down search that was subsequently conducted, during which narcotics were discovered. After reviewing the record, and for the reasons stated *infra*, we disagree with Appellant that his stop or pat-down were illegal.

At the suppression hearing, the Commonwealth presented the testimony of Robinson Township Police Officers Jason Dilanni and Noel Pilewski. Officer Pilewski testified that on July 30, 2012, at approximately 7:40 p.m., he was patrolling an area known to be a "high drug and crime area." N.T. Hearing, 5/14/13, at 19. Officer Pilewski was sitting in his parked vehicle when he observed Appellant coming out of a hotel. *Id.* The officer testified that he knew Appellant, and knew that Appellant lived at the hotel, based on the officer's previous "encounters where [Appellant had] overdosed in his hotel room." *Id.* at 20. Officer Pilewski watched as Appellant walked "towards Route 60. He was on his cell phone and [he was]

- 3 -

heading … southbound on Route 60." *Id.* Officer Pilewski testified that he called Officer Dilanni, who was also patrolling close by, and advised Officer Dilanni of his "experience with [Appellant] and what [Officer Pilewski] knew about [Appellant]…." *Id.* at 21. Officer Pilewski suggested that Officer Dilanni "keep an eye" on Appellant. *Id.*

Officer Dilanni testified that after getting the call from Officer Pilewski, he spotted Appellant and "watched him for a few moments[,]" after which the officer saw "a green Grand A[m] pull[] up with two people" inside. *Id.* at 12. Appellant "entered the passenger's side of the vehicle and sat there for a moment and it appeared some things were exchanged." *Id.* Officer Dilanni elaborated that Appellant and one of the individuals in the car engaged in "sort of like a handshake but it looked like there was something being passed." *Id.* Appellant then exited the vehicle. *Id.* Officer Dilanni testified that he made his observations from "[a]bout 100 feet" away from the green Grand Am. *Id.* at 13. Officer Dilanni decided to stop that vehicle. *Id.*

Meanwhile, Officer Pilewski saw Appellant walking back towards him. *Id.* Just then, Officer Dilanni called Officer Pilewski "and advised [Officer Pilewski] what he witnessed[,]" and that Officer Dilanni "was stopping the vehicle." *Id.* at 21. Officer Pilewski decided to also stop Appellant. *Id.* at 22. The officer "advised [Appellant] why he was being stopped and [that the officer] believed criminal activity had taken place." *Id.* Officer Pilewski testified that Appellant "denied any wrongdoing." *Id.* However, when

Officer Dilanni stopped the green Grand Am, the driver, Richard Connors, admitted to Officer Dilanni that "he had pills" and that he had obtained those drugs from Appellant. *Id.* at 14. Officer Dilanni "relay[ed] that information to Officer Pilewski." *Id.* at 15.

Officer Pilewski testified that after detaining Appellant for "two or three minutes[,]" he was notified by Officer Dilanni about Connors' admission. *Id.* at 23. Officer Pilewski then told Appellant that his and Connors' "stories weren't matching up and [informed Appellant about] what [] Connors had said." *Id.* The officer asked Appellant if he could search Appellant's person. *Id.* at 23. Officer Pilewski testified that Appellant consented to the search, at which point the officer patted-down Appellant's person. *Id.* During the pat-down, the officer found "two pill bottles with [Appellant's] name for Vicodin and Percocet." *Id.* at 24. The pills were compared to pills that had been seized from Connors, and they "appeared to be the same pills." *Id.* at 24. Appellant was then placed under arrest. *Id.*

Again, Appellant challenges the legality of Officer Pilewski's stop, arguing that it was an investigative detention that was not supported by reasonable suspicion. *See* Appellant's Brief at 15. The trial court agreed with Appellant that Officer Pilewski's stop was a detention, and we see no error in that determination. *See* Trial Court Opinion (TCO), 2/11/16, at 7. Notably, at the time of the stop, Officer Pilewski informed Appellant that the officer "believed criminal activity had taken place." N.T. Hearing at 22. We conclude that the officer's statement was sufficient to express to Appellant

- 5 -

"an official compulsion to stop and respond…." *Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa. Super. 2000) (citation omitted). Accordingly, we agree with Appellant, and the trial court, that Officer Pilewski's stop constituted an investigative detention.

Therefore, we must next determine whether the trial court correctly concluded that Officer Pilewski possessed reasonable suspicion to justify that detention. *See DeHart*, 745 A.2d at 636 (stating that an investigative detention "requires 'reasonable suspicion' of unlawful activity") (citation omitted).

> In deciding whether reasonable suspicion exists for an investigatory detention, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability. Among the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight.

*Commonwealth v. Gray*, 784 A.2d 137, 142 (Pa. Super. 2001) (internal citations omitted).

Here, we agree with the trial court that the totality of the circumstances provided Officer Pilewski with reasonable suspicion that Appellant was engaging in criminal activity. Namely, Officer Dilanni told Officer Pilewski that Appellant had entered a vehicle for a brief period of

time, during which Officer Dilanni saw Appellant and an occupant of the vehicle pass something between them. Appellant's conduct in the vehicle was especially suspicious given Officer Pilewski's knowledge of Appellant's history of drug use, and the high-drug area in which they were located. We conclude that the totality of these circumstances justified Officer Pilewski's decision to stop Appellant for further investigation. *See Commonwealth v. Frank*, 595 A.2d 1258, 1259-60 (Pa. Super. 1991) (finding reasonable suspicion to justify an investigative detention where officers surveilling an area known for drug activity saw a known drug dealer get into Frank's car; Frank and the dealer drove to another area where they met other men; Frank exchanged unknown materials with one of the men; and Frank then drove the drug dealer back to the place where the dealer had entered Frank's vehicle, after which Frank drove off).

Additionally, Officer Pilewski's pat-down of Appellant's person was not illegal. The officer had only detained Appellant for "two or three minutes" before receiving further information from Officer Dilanni that Connor had admitted to obtaining drugs from Appellant. N.T. Hearing at 23. Officer Pilewski then asked to search Appellant's person and Appellant consented. While Appellant claims that his consent was involuntary, the thrust of his argument is premised on his claim that he was illegally stopped, which we reject for the reasons stated *supra*. Moreover, Appellant misconstrues the record when he argues that he simply 'acquiesced' to Officer Pilewski's statement that "he was about to search [Appellant]." Appellant's Brief at

- 7 -

12. Officer Pilewski testified at the suppression hearing that he *asked* Appellant if he could search him. N.T. Hearing at 23. The Commonwealth followed up that testimony by asking the officer, "[d]id you ask him [whether you could pat him down] or did you tell him?" **Id.** Officer Pilewski stated, "I asked him." **Id.** According to Officer Pilewski, Appellant "said that [was] fine," and told the officer that he did not "have anything on [him] that [was] not prescribed to [him]." **Id.** The officer then conducted the pat-down. **Id.** Because the stop of Appellant was lawful, and he consented to the pat-down, it was not illegal.

In any event, we also note that even if Appellant had not consented to the pat-down, it was still legal. Connor's admission to Officer Dilanni that Appellant had given him drugs, which was relayed to Officer Pilewski prior to the pat-down, provided Officer Pilewski with probable cause to arrest Appellant. Thus, the officer was justified in searching Appellant. **See Commonwealth v. Ingram**, 814 A.2d 264, 272 (Pa. Super. 2002) ("[I]n all cases of lawful arrests, police may fully search the person incident to the arrest.") (citations omitted).

For all of these reasons, the trial court did not err in denying Appellant's pretrial motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2016