J. S04037/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :     IN THE SUPERIOR COURT OF
                                          :             PENNSYLVANIA
                    v.                  :
                                            :
TISHAUN T. BLACK,                :           No. 1147 MDA 2017
                                            :
                 Appellant       :

Appeal from the Judgment of Sentence, June 22, 2017,
in the Court of Common Pleas of Dauphin County
Criminal Division at No. CP-22-CR-0005891-2016

BEFORE: SHOGAN, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 27, 2018**

Tishaun T. Black appeals from the June 22, 2017 judgment of sentence entered in the Court of Common Pleas of Dauphin County following his conviction in a waiver trial of two counts of possession with intent to deliver ("PWID"), one count of criminal use of a communication facility, two counts of use/possession of drug paraphernalia, and one count of possession of a controlled substance.[1] The trial court sentenced appellant to an aggregate term of imprisonment of five to ten years. We affirm.

The trial court set forth the following factual history:

> At the suppression hearing, the Commonwealth presented the testimony of Police Officer Nicholas Ishman of the Harrisburg Police Department. Officer Ishman has been a police

---

[1] 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 7512(a), 35 P.S. §§ 780-113(a)(32) & (a)(16), respectively.

officer for nine years. Officer Ishman testified to the events that took place on September 17, 201[6], the date of the incident. Officer Ishman has had numerous prior contacts with [a]ppellant, including prior drug arrests and was aware of a prior arrest.[Footnote 10] From following [a]ppellant on social media, Officer Ishman was aware that [a]ppellant sometimes goes by the nickname "Boobie."

[Footnote 10] Officer Ishman follows [a]ppellant on social media.

Around 10:30 p.m. on the night of the incident, Officer Ishman was talking to a confidential informant ("CI") who set up a drug buy for an ounce of crack. The CI informed Officer Ishman that the purchase would be from someone named "Boobie." The CI sent a text message to 717-[XXX-XXXX] asking for food (food is sometimes used as a code word for crack). The CI also arranged to purchase an 8th of an ounce of marijuana. Between texting and phone calls, the deal was to take place at 2743 Reel Street in Harrisburg, Pennsylvania. Officer Ishman testified that he knew that [a]ppellant's parole address was 2743 Reel Street and that this is a high drug crime area. As Officer Ishman and the CI approached Reel Street, the CI received a phone call from the same number as mentioned above. The CI relayed to Officer Ishman that the person on the other end of the phone call was standing in the middle of the street. When Officer Ishman turned onto Reel Street, he saw [a]ppellant standing in the middle of the street and no one else around at that time.[Footnote 11] As Officer Ishman pulls up to [a]ppellant, [a]ppellant immediately starts running. After 20-30 yards, [a]ppellant lies down and Officer Ishman approaches him and does a pat down. During this pat down, Officer Ishman felt a package that he immediately knew to be marijuana. Officer Ishman removed a large Wal-Mart bag from [a]ppellant's pocket which contained a large amount of marijuana and a large amount of crack cocaine, a digital scale, two

> Oxycodone pills (in the marijuana), two cell phones, and $300 in cash. Finally, on direct-examination, Officer Ishman testified that he has prior experience in narcotics investigation[,] including academy training in narcotics and has made hundreds of marijuana arrests throughout his career.
>
> > [Footnote 11] The CI reached out to [a]ppellant around 1:00 a.m. in the early morning hours.
>
> > On cross-examination, Officer Ishman testified that the CI was recently arrested and was looking for a way to help himself out. Officer Ishman further testified that he did not see any controlled substance and that he never heard who the CI was talking to on the phone.

Trial court opinion, 8/23/17 at 2-5 (footnote 9 and citations to notes of testimony omitted).

As previously stated, appellant was convicted of the aforementioned crimes in a waiver trial and sentenced to an aggregate term of imprisonment of five to ten years. The record reflects that appellant filed a timely notice of appeal to this court. The trial court then ordered appellant to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Following the grant of an extension of time, appellant filed a timely Rule 1925(b) statement. The trial court then filed its Rule 1925(a) opinion.

Appellant raises the following issue for our review:

> Whether the Honorable Trial Court erred in denying suppression of the evidence where the officer arrested [a]ppellant without any description of a suspect and subsequently searched [a]ppellant without witnessing a crime or criminal activity afoot?

Appellant's brief at 7.

Our standard of review for challenges to the denial of a suppression motion is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-784 (Pa.Super. 2012), quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361-362 (Pa.Super. 2012) (citations omitted).

Appellant complains that because Officer Ishman did not have a physical description of the suspect who was to sell the crack cocaine and marijuana to the CI and because Officer Ishman did not observe appellant engage in criminal activity, the evidence that Officer Ishman seized should have been suppressed.

In evaluating [a]ppellant's argument that he was unlawfully arrested, we take note of the following principles:

> [L]aw enforcement authorities must have a warrant to arrest an individual in a public place unless they have probable cause to believe that 1) a felony has been committed; and 2) the person to be arrested is the felon. A warrant is also required to make an arrest for a misdemeanor, unless the misdemeanor is committed in the presence of the police officer. The legislature, however, has authorized law enforcement officers to make warrantless arrests for misdemeanors committed outside their presence in certain circumstances.

In the Fourth Amendment context, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. In other words,

> Fourth Amendment reasonableness is predominantly an objective inquiry. We ask whether the circumstances, viewed objectively, justify the challenged action. If so, that action was reasonable whatever the subjective intent motivating the relevant officials. This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts . . . .

. . . .

[T]he inquiry must simply focus on whether the relevant facts and circumstances within the arresting officer's knowledge are sufficient to lead any person of reasonable caution to conclude that an offense has

been or is being committed, based on a probability,
and not a prima facie showing, of criminal activity.

*Commonwealth v. Martin*, 101 A.3d 706, 721-722 (Pa. 2014) (internal

citations and quotation marks omitted).

Stated differently, probable cause exists where "the facts and

circumstances which are within the knowledge of the officer at the time of

the arrest, and of which he has reasonably trustworthy information, are

sufficient to warrant a man of reasonable caution in the belief that the

suspect has committed or is committing a crime." *Commonwealth v.*

*Thompson*, 985 A.2d 928, 931 (Pa. 2009) (citation omitted). We need not

discern whether the officer's belief was more likely correct than incorrect.

*Id.* A probability of criminal activity, rather than a *prima facie* showing

thereof, is sufficient. *Id.* To answer the question, we examine the totality

of the circumstances. *Id.*

Here, the record reflects that Officer Ishman, in his ninth year as a

police officer,[2] has worked in the street crimes unit of the police department

for five years and has had numerous encounters with appellant, including

drug arrests. (Notes of testimony, 3/2/17 at 3, 4, 7.) Officer Ishman also

followed appellant on social media[3] and learned that appellant went by the

---

[2] The record reflects that Officer Ishman has Police Academy training in narcotics, attended narcotics conferences, and has made hundreds of marijuana arrests. (Notes of testimony, 3/2/17/at 12.)

[3] The record reflects that appellant had two Facebook pages. (Notes of testimony, 3/2/17 at 5.)

nickname "Boobie." (*Id.* at 5.) In addition to appellant's identifying himself by that nickname on social media, other informants told Officer Ishman that appellant went by the nickname "Boobie." (*Id* at 5-6.)

The record further reflects that at approximately 10:30 on the night of September 17, 2016, Officer Ishman spoke with the C.I. who stated that they could buy an ounce of crack from "Boobie." (*Id.*) Officer Ishman asked the C.I. if "Boobie" was appellant, and the C.I. confirmed that "Boobie" was, indeed, appellant. (*Id.*) The C.I. then texted a number that the C.I. had listed as "Boobie," asking whether "Boobie" had any "food." (*Id.*) The C.I. confirmed that "food" was code for "crack." (*Id.*) The C.I. received a return text message stating the price of $1,150 for an ounce of crack. (*Id.* at 7.) The C.I. also arranged to purchase an eighth of an ounce of marijuana from "Boobie." (*Id.*) The C.I. and "Boobie" then made arrangements for the purchases via text messaging and oral telephone communications. (*Id.* at 8-9.) The two arranged for the sales to occur in front of 2743 Reel Street, which was a high-crime area, as well as appellant's parole address. (*Id.* at 7, 9-10.)

The record reflects that after completing arrangements for the drug sales, the C.I. received a telephone call from the person the informant listed as "Boobie." (*Id.* at 10.) The C.I. informed Officer Ishman that the target was standing in front of 2743 Reel Street residence. (*Id.*) Officer Ishman then drove to the Reel Street location, where he saw appellant standing in

the middle of the street in front of appellant's parole residence, 2743 Reel Street. (*Id.* at 11.) Officer Ishman testified that no one else was out on the street at that time. (*Id.*) Officer Ishman, who was in uniform, then pulled his car up to appellant, and appellant immediately ran north on Reel Street. (*Id.*) Officer Ishman chased appellant for approximately 20 to 30 yards. (*Id.*) Appellant then laid down and started cursing. (*Id.*) Officer Ishman handcuffed appellant and conducted a pat-down search; felt what he knew to be marijuana; removed a Wal-Mart bag from appellant's pocket that contained marijuana and crack cocaine, a digital scale, two Oxycodone pills in the marijuana, two cell phones, and $300 in cash. (*Id.* at 12.)

Considering, as we must, the Commonwealth's evidence, as well as the uncontradicted evidence when read in the context of the record as a whole, the record supports the trial court's finding that based upon the totality of the circumstances within Officer Ishman's knowledge, a person of reasonable caution would conclude that criminal activity was probable. Therefore, because the record supports the trial court's factual findings and its legal conclusions drawn from those facts were correct, appellant's claim necessarily fails.

Judgment of sentence affirmed.

J. S04037/18

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/27/2018