J-S09043-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSE LUIS GONZALES | : | |
| | : | |
| Appellant | : | No. 1119 MDA 2017 |

Appeal from the Judgment of Sentence May 4, 2017
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0003943-2016

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MARCH 29, 2018**

Appellant, Jose Luis Gonzales, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following his bench trial convictions for possession with intent to deliver ("PWID"), possession of drug paraphernalia, receiving stolen property, firearms not to be carried without a license, and false identification to a law enforcement officer.[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts of this case.  Therefore, we have no reason to restate them.  The relevant procedural history of this case is as follows.  On September 21,

_____

[1] 35 P.S. §§ 780-113(a)(30), (32); 18 Pa.C.S.A. §§ 3925(a), 6106(a)(1), 4914(a), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

2016, Appellant filed a suppression motion. The court held a two-day suppression hearing on February 21, 2017, and February 27, 2017. After the suppression hearing concluded, the court denied Appellant's suppression motion; and the case proceeded to a stipulated bench trial. The court convicted Appellant of PWID, possession of drug paraphernalia, receiving stolen property, firearms not to be carried without a license, and false identification to a law enforcement officer. The court sentenced Appellant to an aggregate term of six (6) to sixteen (16) years' imprisonment on May 4, 2017. On May 15, 2017, Appellant timely filed a post-sentence motion; the court denied relief on June 15, 2017. Appellant timely filed a notice of appeal on July 17, 2017. That same day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on August 7, 2017.

Appellant raises the following issue for our review:

> DID THE TRIAL COURT ERR IN DENYING [APPELLANT'S] MOTION TO SUPPRESS WHERE THE POLICE OFFICERS LACKED REASONABLE SUSPICION THAT CRIMINAL ACTIVITY WAS AFOOT AND, THEREFORE, DID NOT HAVE AN ADEQUATE BASIS TO SUBJECT [APPELLANT] TO AN INVESTIGATORY DETENTION WHICH WAS IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES' CONSTITUTION AND ARTICLE I, SECTION 8 OF THE PENNSYLVANIA CONSTITUTION?

(Appellant's Brief at 5).

Our standard of review of the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa.Super. 2012), *appeal denied*, 618 Pa. 684, 57 A.3d 68 (2012).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Jeffery D. Wright, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed October 27, 2017, at 6-9) (finding: under totality of circumstances, police had sufficient information to form reasonable suspicion and conduct valid investigatory detention of Appellant; for months, police investigated Appellant on suspicion of selling heroin and guns; Detective Cavanaugh tracked Appellant's drug and gun activity as well as his location; police knew after they executed search

warrant on Howard Avenue address, Appellant would likely try to stash drugs and guns in his possession; when police arrived at storage facility, they immediately recognized Appellant as well as his vehicle; Appellant's departure from East End Avenue address and arrival at storage facility with large tote bag coincided perfectly with execution of search warrant on Howard Avenue location; based on Officer Hagy's training and experience, he knew drug and gun sellers often use storage lockers as stash houses and believed Appellant's red tote contained illegal items; investigatory detention of Appellant was reasonable under these circumstances; Officer Hagy instructed Appellant to lower tote bag and slowly back up for officer safety; in abundance of caution, Officer Hagy handcuffed Appellant while Officer called for backup; Officer Hagy's actions were reasonable for officer safety; Officer Hagy told Appellant he was being detained and asked him to sit on curb; police restricted Appellant's liberty for limited duration and for purposes of officer safety during investigative detention; police had probable cause to arrest Appellant for false identification after he gave incorrect name). Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/29/2018

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA       :

       vs.                    :           No. 3943-2016

                              :

JOSE LUIS GONZALES            :

                              :

## **O P I N I O N**

BY: WRIGHT, J.                          October _77_, 2017

This Opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of

Appellate Procedure. In his timely Statement of Errors [Statement], Defendant Jose Luis

Gonzales appeals from the judgement of sentence imposed on May 4, 2017 following a

suppression hearing and stipulated bench trial held over the course of two days,

February 21, 2017 and February 27, 2017. (Rule 1925(b) statement r 8/7/2017). Defendant

argues that his Motion to Suppress was improperly denied and he raises the limited

issue that the police lacked reasonable suspicion of criminal activity to subject

Defendant to an investigatory detention. Id. A review of the record and applicable law

demonstrates that Defendant's contentions lack merit. Therefore, his appeal should be

dismissed and the judgement of sentence affirmed.

## **BACKGROUND**

In early Spring of 2016 Detective Michael Cavanaugh from Lancaster County's

drug task force began investigating multiple reports of a person named Jose Gonzales

selling heroin and firearms in the Lancaster area. (N.T. Suppression Hr'ng 2/27/17,

3943-2016 at 68). Detective Cavanaugh received reports from multiple informants that

Jose Gonzales conducted his "business" from his house on 233 Howard Avenue in Lancaster City and that he had ties with the Latin Kings, a known Lancaster area street gang. Id. at 68, 69. After a period of surveillance demonstrating steady foot traffic in and out of Defendant's house, collecting various reports from informants, and making a successful controlled delivery of heroin from Defendant, Detective Cavanaugh obtained a warrant to search the Howard Avenue home in March 2016. Id. at 69, 70. However, on the afternoon in which he intended to execute the warrant, the house was completely quiet and there was no longer any foot traffic in and out of the house. Id. at 70. Detective Cavanaugh determined that the occupants of the house had been tipped to the incoming raid and he chose not to serve the warrant on that day. Id.

Between March and July of 2016, Detective Cavanaugh continued to gather information relating to Jose Gonzales and determined that he went by the street name of "Coco." Id. at 71. Detective Cavanaugh also discovered that Defendant had moved to an address on East End Avenue in Lancaster City. Id. at 70. All reports from his confidential informants revealed that Defendant continued to sell heroin from the house on Howard Avenue even though he had relocated to the new home. Id. at 71. Accordingly, Detective Cavanaugh planned to surveil the Defendant's address on East End Avenue on the day he served the search warrant on Howard Avenue in the event that Defendant tried to transfer a stash of drugs. Id. at 74.

Detective Cavanaugh obtained a new search warrant for the Howard Avenue house in July of 2016 based on the facts that were known to him in March of 2016 when he originally planned to execute the search warrant and the additional surveillance he conducted since that date. Id. at 73. Prior to serving the July warrant, a briefing was

2

arranged at East Lampeter Police Department with the Lancaster County SERT team, the Drug Task Force, and some Lancaster City police officers. Id. at 73, 74. Detective Cavanaugh advised the team of the facts known to him, namely that Defendant was selling heroin, guns, and that he also had ties to the Latin Kings. Id. at 74. He also notified the team that Defendant was no longer living at Howard Avenue, but he still had ties to the residence. Id. Detective Cavanaugh anticipated that after the warrant was served at the Howard Avenue house, Defendant would likely try to move any drugs he had in his possession from the East End Avenue house to another location. Id. The officers that were assigned to track the East End Avenue House were shown pictures of the Defendant from social media and were told that Defendant operated a green Ford Explorer. (N.T. Suppression Hr'ng 2/21/17, 3943-2016 at 9, 10).

On July 14, 2016, the SERT team and the Drug Task Force executed the search warrant on the Howard Avenue location. Officer Jason Hagy, of Lancaster City Bureau of Police was specifically tasked with locating the Defendant's vehicle. Id. Officer Hagy was accompanied in his police vehicle by Detective Robert Whiteford. Id. at 11. Both Detective Whiteford and Officer Hagy were present at the general briefing at East Lampeter Township Police Department on the day before, and were also specifically briefed on their assignment by Detective Cavanaugh. (N.T. Suppression Hr'ng 2/27/17 at 74.) They were provided with several photographs of the Defendant as well as the license plate number of Defendant's green Ford Explorer. (N.T. Suppression Hr'ng 2/21/17 at 9, 10).

Officer Hagy and Detective Whiteford set up in a parking lot that had a visual of the intersection of East End Avenue and Ann Street, close to the 400 block of East End

3

Avenue where Defendant was living. Id. at 12. Officer Hagy did not see the Defendant or his vehicle at that location at the time that the warrant on Howard Avenue was being served. Id. While the search warrant was being executed, Detective Whiteford began receiving reports from the Lancaster City Safety Coalition about sightings of Defendant's vehicle. Id. Officer Hagy and Detective Whiteford were eventually directed to the intersection of Manor Street and Campbell Avenue in Lancaster City where they located a green Ford Explorer that they could identify as the Defendant's based on the license plate and physical description they had been provided. Id. at 14. They spotted the vehicle as it was pulling into the driveway of a storage unit. Id.

After identifying the vehicle, Officer Hagy immediately recognized the Defendant from the various photographs he was shown by Detective Cavanaugh. Id. at 16. The Defendant was holding a red tote bag in one hand and inserting a key into the lock of the storage unit with the other. Id. at 16. Officer Hagy exited his vehicle and drew his weapon in a "safety circle", a police maneuver in which the officer's gun is pulled into his chest and facing downwards. Id. at 15. Upon approach of the Defendant, Officer Hagy observed another individual in the Defendant's vehicle. Id. at 19. Not wanting to expose his back to the individual in the vehicle he maintained his position and asked the Defendant to drop the bag and walk backwards towards him. Id. at 18. After initial hesitation, Defendant complied. Id. Once Defendant was near, Officer Hagy holstered his weapon and handcuffed him. Id. at 19. Officer Hagy testified that based on his training and experience as a police officer he chose to handcuff Defendant because there were only two officers there to handle two individuals and he had to ensure the safety of Detective Whiteford and himself. Id. at 20. Officer Hagy told the Defendant

4

that he was not under arrest but he was being detained. Id. Defendant was seated on the ground until backup arrived. Id. at 21.

Officer Jonathan Caple of the Lancaster City Bureau of Police was subsequently dispatched to assist Officer Hagy and Detective Whiteford with the suspects they had detained. Id. Upon arrival, Officer Caple was tasked with determining the identity of the defendant. Id. at 31. Officer Caple asked the Defendant his name and date of birth and then relayed the information given to him through Lancaster County radio so that the identity could be verified. Id. at 33. The Defendant provided a name and birthdate which were determined to be incorrect. Id. at 32. Defendant was then advised that he was under police investigation and that he had an obligation to provide Officer Caple with accurate information. Id. at 33. Defendant nevertheless provided Officer Caple with additional false names and false dates of birth. Id. at 34. Officer Caple eventually got the correct information from the Lancaster County radio and Defendant admitted that his name was indeed Jose Luis Gonzales with a date of birth of 3/27/1974. Id. At that time Defendant was under arrest for False Identification to a Law Enforcement officer. Id. at 52. A drug detection canine was then brought to the scene and indicated a positive presence of narcotics inside of the red tote bag that Defendant had been carrying. Id. at 49. Police subsequently obtained a search warrant for the bag and found that it contained 556 individual bags of heroin and a stolen 9mm handgun. Id. at 49, 106. The Defendant did not challenge at the suppression hearing or at trial, and does not challenge now, the sufficiency of the search warrant or any of the actions taken by the officers after the search warrant was executed. Id. at 6.

5

## DISCUSSION

Defendant asserts in his statement of errors that the police lacked reasonable suspicion of criminal activity to subject him to an investigatory detention and that any subsequent evidence gathered by police should have been suppressed as fruit of an illegal stop and detention. (Rule 1925(b) statement, 8/7/17). Contained within that issue is whether the handcuffing of the defendant by Officer Hagy escalated the investigatory detention into a custodial arrest.

An investigatory detention subjects a person to a "stop and period of detention in order for the law enforcement officer to obtain more information." Com. v. Rosas, 875 A.2d 341, 347 (2005). For the police to subject an individual to an investigatory detention they must have at least reasonable suspicion. Com. v. Ellis, 662 A.2d 1043, 1047 (Pa. 1995). In determining whether reasonable suspicion exists, the Court must assess the totality of the circumstances and determine whether the facts that were known to the police officers at the time of the investigatory detention, support the officer's belief that criminal activity was occurring. Com. v. Wilson, 622 A.2d 293, 295 (Pa. Super. 1993). Reasonable suspicion is not probable cause and therefore a lesser showing of facts, in both quantity and reliability, will justify an investigatory detention. Commonwealth v. Zhahir, 561 Pa. 545, 751 A.2d 1153 (2000).

It is well settled that handcuffing of an individual does not automatically turn an investigative detention into an arrest. Rosas at 348. A police officer may for their safety, handcuff an individual as part of an investigatory detention. Commonwealth v. Guillespie, 745 A.2d 654, 660–661 (Pa. Super.2000). The test for whether an individual is under arrest is an objective one viewed in "the light of the reasonable impression

6

conveyed to the person subjected to the seizure rather than the strictly subjective view of the officers or the person being seized. Com. v. Butler, 729 A. 2d 1134, 1137 (Pa. Super. 1999) appeal denied, 560 Pa. 668, 742 A.2d 167 (1999).

Based on the facts in this case, I found that under the totality of the circumstances the police had more than sufficient evidence to form the reasonable suspicion that the defendant was engaged in criminal activity so as to be able to validly conduct an investigatory detention. For months, Defendant had been under investigation by Detective Cavanaugh for suspicion of selling heroin and firearms. Using informants, Detective Cavanaugh tracked Defendant's drug and gun selling activity as well as his current whereabouts. Moreover, he knew that once the search warrant on the Howard Avenue house was executed, the Defendant would likely try to stash away drugs and firearms in his possession and the Officers who were tasked with monitoring Defendant were aware of this. (N.T. Suppression Hr'ng 2/27/17 at 74.)

When the officers arrived at the storage locker they immediately recognized the Defendant from the various photographs that they were shown by Detective Cavanaugh. They recognized the vehicle that they were tasked with tracking down by its make, model, color, and license plate. Defendant's departure from East End Avenue address and arrival at the storage facility with a large tote bag coincided perfectly with the execution of the warrant on the Howard Avenue location. Officer Hagy testified that as a result of his extensive training and experience in narcotics investigations that he was aware that sellers of firearms and drugs often use storage lockers as their stash houses and that he believed that the red tote bag contained illegal items. (N.T.

7

Suppression Hr'ng 2/21/17 at 27.) Given these circumstances in their totality, it was reasonable for Officer Hagy to subject the Defendant to an investigatory detention.

Moreover, the actions of Officer Hagy did not transform the investigatory detention into a custodial arrest. When Officer Hagy commanded the Defendant to put down the bag and slowly back up he did so out of concern for officer safety.[1] He realized that there was another individual in the Defendant's vehicle and that he would be unable to approach Defendant without exposing his back to the individual. Even with Detective Whiteford as backup there were only two officers to handle two individuals and so in an abundance of caution, he handcuffed Defendant and told him to sit on the curb while he called for backup. I found that the actions taken by Officer Hagy were reasonable for the purposes of officer safety and reasonable given the circumstances of the situation. Additionally, I note that it was not reasonable for Defendant to believe that he was under arrest at that time. He was informed after being handcuffed that he was merely being detained and he was asked to sit on the curb. While his liberty at that moment was somewhat restricted, it was of limited duration and done for the purposes of officer safety and within the ambit of an investigatory detention.

Once Defendant gave false identification to Officer Caple there was probable cause to arrest him. At that moment, the investigatory detention became an arrest. The mere fact that he was handcuffed at the time that the officer was trying to ascertain his identity does not transform the detention into anything more.

---

[1] Indeed, it turns out that this concern for officer safety was entirely warranted given the fact that a subsequent search of the tote bag Defendant was holding at the time he was detained contained a firearm.

8

## CONCLUSION

Because there was sufficient evidence for the police officers to have a reasonable suspicion that the Defendant was engaged in criminal activity and thus subject him to an investigatory detention, Defendant's appeal should be dismissed. Accordingly, I enter the following:

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA : 

vs. :     No. 3943-2016

JOSE LUIS GONZALES :

## ORDER

BY: WRIGHT, J.

AND NOW, this 27th day of October, 2017, the Court hereby submits this

Opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

BY THE COURT:

JEFFERY D. WRIGHT
JUDGE

Attest:

Copies to:

Lance D. Green, ADA;

Diana C. Kelleher, APD